# Johnston's Administrators *versus* Johnston.

1. Previously to the Act of 1848, the receipt by the husband of the wife's *choses in action*, was presumed to be a reduction of them to his own possession, unless countervailed by proof of a "positive, precise, clear, and consistent" intention to the contrary at the time of so doing.

2. If the husband received the wife's money before the Act of 1848, it cannot now be recovered from the husband's estate, upon a contract afterwards made with the wife.

3. A contract by the husband with his wife, to repay her money he had received from her before the Act of 1848, is void for want of parties as well as consideration.

[Johnston's Adm'rs *v.* Johnston.]

4. A receipt of the wife's money by the husband, since the Act of 1848, is presumed to have been for her.

5. So complete is the wife's control over her money, since the Act of 1848, that she may loan it to her husband, and his estate would be compelled to repay it.

6. Since the Act of 1848, if the husband, by the wife's direction, expends her money in a particular manner, for her benefit and the comfort of her family, she can neither legally nor equitably recover it from his estate.

ERROR to the Court of Common Pleas of *Fayette county*.

Louisa Johnston, plaintiff below and defendant in error, was married to George Johnston, prior to 1847. She became entitled, as one of the heirs of her father, to some $500, one-half of which was paid over in that year, and taken possession of by the husband, and used as his own.

At the time he received the money, nothing was said or done by him as to how he held it, whether for his wife or himself.

The other half of the money was received by her husband in November or December, 1848. When this was received they lived in the country. He had bought property in Brownsville, and, at the instance of his wife, he repaired and fitted up one of his houses, and applied, by her request, the said money received by him in November or December, 1848, to such repairs and fitting up. They afterwards moved into this house, upon which the last money was expended, and resided there. He died in February, 1856. His widow retained real estate, appraised under the act allowing widows $300 of property.

She has brought this suit to recover from the estate of her deceased husband, the whole amount received by him as above stated, claiming that the money was not converted by him to his own use, or appropriated as she requested, but that it remained hers in his hands, as a trust or loan, and since his death has become a debt against his estate, and due to her. The defendant for the estate resist the claim, because the law of the land and the act of the husband, made the one-half of the money claimed the absolute property of such husband at the time it was received, and because the other half was appropriated by him to the fitting up of a house as a residence, for the comfort, convenience, and gratification of the plaintiff, and at her instance and request.

Plaintiff proved frequent declarations of the husband, made subsequently to the disposition of the money as aforesaid, to the effect that he intented to pay her back that money.

Under the charge of the court, (GILMORE, P.,) the jury found for plaintiff, $575.33.

The point in the charge to which exceptions were taken, is fully stated in the opinion, *infra*.

*Howells* and *Patterson*, for plaintiff in error:
Cited 3 Atkyns, 399; *Stoit* v. *Ayloff*, 1 Ch. Rep. 33; *Hind's*

*Appeal,* 5 Whar. 143 ; 3 Harris, 499 ; 2 John. Ch. R. 537 ; Story, Eq. Jur. 1372.

*John R. Ewing,* for defendant in error :
Cited 6 W. & S. 290 ; *Gray's Estate,* 1 Barr, 327 ; *Gouchenour's Estate,* 11 Harris, 463 ; *Herr's Appeal,* 5 W. & S. 500 ; *Hind's Appeal, supra.*

The opinion of the court was delivered at Philadelphia, January 3, 1859, by

THOMPSON, J.—The general charge of the learned judge of the court below to the jury, was not exceptionable, and there was no assignment of error upon it. But, after having retired to consider of their verdict, the jury returned into court for further instruction, and propounded the following question : " Supposing that the wife did allow the money to be appropiated to the fitting up of the house, whether this agreement afterwards to pay it, would be binding upon the intestate ?"

This inquiry evidently had in view instruction on the effect of an alleged contract between the husband and wife, to repay her money, received previously by him from her father's estate. To this the court responded, " that if you are satisfied that he distinctly made such a promise, or declaration of intention, there was a sufficient consideration to support such a declaration ; but you must be satisfied that, in the declaration he made, he referred to this money received before the Act of 1848, as well as that received after." To this answer all the specifications of error apply, and may be considered together.

It is easy to understand how an error may be committed by a judge, under circumstances like those occurring in this case. A question involving important principles is suddenly propounded by a jury—the routine of business seems to call for an immediate response—it is given, and error often ensues for the want of time for reflection. Thus a fair chance to be accurate is scarcely afforded. But, however occurring, the reason for correction is the same. The symmetry of the law must be preserved.

Previously to the Act of 1848, the receipt by the husband of the wife's *choses in action,* was presumed to be a reduction of them to his own possession, unless countervailed by proof of a " positive, precise, clear and consistent" intention to the contrary, at the time of so doing. *Gray's Estate,* 1 Barr, 329. The common law gave him this right as incident to the marriage relation. 3 Harr. 499. The point of inquiry by the jury was, whether, having so received the wife's money, his promise to pay it back was binding or not ? The answer of the court was in the affirmative to the inquiry, both as to the money received before, as well as after the Act of 1848. This was error. As to that

[Johnston's Adm'rs *v.* Johnston.]

portion received before the passage of the act, it could not be recovered from the husband's estate, upon the footing of a contract afterwards made with the wife. · The contract, as such, was void for want of parties as well as consideration. The law recognized no separate will, as between husband and wife ; *Hind's Appeal*, 5 Whart. Rep. 138; and not until after the passage of the act referred to could there be any contract between them. A contract to repay the money, executed at the time of the receipt of it, has been held to be evidence on the point of conversion, and was allowed a decisive effect in the case just referred to ; but not as a contract *inter partes*. The instruction to the jury should have distinguished between the receipts before and after the act.

But the error went beyond this, for the instruction assumed the right of the plaintiff to recover, if the deceased had made a declaration of intention to pay ; on the ground that the receipt of the money was a sufficient consideration to raise a promise. A recovery would be inevitable in every *case* if this were the law. For it would generally be quite easy to procure some good listener, of tenacious memory to prove such declaration ; made no matter where, when, or under what circumstances ; the result against the estate would be sure to follow. But it is not necessary to pursue the reflection, for if an express contract would not have sufficient vitality to confer a right to recover, a mere declaration could scarcely be held to be more efficient.

It is not intended to deny that declarations made at the time of receiving the wife's money, or *choses in action*, or afterwards, but clearly evincive of the intent at the moment of reduction to possession, may not repel the presumption of personal acquisition by the husband, and establish the relation of trustee for the wife. In such a case the wife's right would survive ; *Gouchenour's Estate*, 11 Har. 460. But to have such an effect as was said by Gibson, C. J., *In re Gray's Estate*, 1 Barr, 327, "the medium of proof of such admissions is to be scanned with extreme vigilance, and to prevent the consequences of misapprehension, or mistake, on part of the witnesses, it is necessary that they be deliberate, positive, precise, clear and consistent with each other ; not inconsiderate, vague, or discrepant." In a word, the disclaimer of conversion by the husband to his own use of his wife's money, must be clearly proved either by acts or declarations at the time, or by subsequent admissions which leave no doubt of the intent at the time. If the remark of the learned judge, about the declaration of intention by the intestate, subsequent to the receipt of the money, had referred to this aspect of the case, it was entirely insufficient to the true administration of the law, in a case of an attempted establishment of a trust for the benefit of the wife. Nor do we think the evidence as exhibited on the paper books, approached the requirement deemed indispensable to such

a result in *Gray's Estate, supra.* There was nothing in the general charge to redeem the error in this particular.

As to that portion of the money received after the Act of 1848, it stood upon a different footing. The receipt of it by the husband rested upon an opposite presumption. As the law made it hers, it presumed it to have been received for her. So full was her right and dominion over it, that she might have loaned it to her husband, and his estate would have had to repay it. This being so, her power was equal to a direction to him to appropriate it for her benefit and comfort, which, if done, would bind her. So here, if she gave him direction to dispose of, or expend it in a particular manner, for her benefit, and the comfort of her family, and it was so done, she would have no legal or equitable right to come upon her husband's estate for it. The law upon *that* part of the case was in the general charge correctly given to the jury, viz : " that if the money," received after the Act of 1848, " was appropriated to the fitting up of a house, at her particular request, for her own comfort and that of her family, she cannot now recover it." But this accurate view of the case was lost sight of in the answer to the point put by the jury. For, without any reference *to* it the court affirmed the proposition " that *if* the wife did allow the money to be appropriated to fitting up the house, that his agreement afterwards to pay it would be binding upon his estate," saying, " that if such a promise or declaration of intention was made, there was a sufficient consideration to support it." Had such a promise or declaration to repay been made at the time of expenditure, this might have been all right, for then the transaction might have been treated as a loan ; but it is difficult to discover any consideration for a subsequent promise to repay it, made after an expenditure of it at the request of the wife, for her comfort and benefit. On that point, that it had been so expended, assumed in the question of the jury, they should have been instructed that there was no consideration for it. To hold the estate answerable upon a mere declaration of intention to pay, as the charge assumed might be done, would lead to innumerable and gross frauds upon creditors and heirs.

Judgment reversed, and *venire facias de novo* awarded.