## WILLIAM R. DUFF *vs.* JAMES MAGUIRE & others.

**Six** persons signed an instrument reciting that, desiring to obtain and work a gold mine, they appointed one of their number to go to California and select a mine, which, if his recommendation should be satisfactory, they would contribute equally to buy and work under his superintendence, at a salary to be fixed; and agreeing to contribute a hundred dollars each to pay his expenses to California. He was also orally assured that he should be reimbursed for his expenses over five hundred dollars, which amount his associates paid to him in equal sums; and he took with him to California a letter of instructions signed "for subscribers to agreement" by one of the five, who afterwards wrote a letter to him in the name of the "Company," abandoning the project on the ground that his recommendation was not satisfactory. Both of these letters purported to direct and advise him in behalf of the five, but contained expressions recognizing his association with them as well as his agency. *Held*, that he could not maintain an action at law against his associates jointly, for his services and expenses as agent under the original instrument.

CONTRACT by one of the signers of the following instrument against his five associates in signing the same, to recover compensation for his services as agent, and money expended by him for the purposes of the agency.

"Boston, June 15, 1866. We the undersigned, desirous of obtaining and working a gold property, do appoint Mr. W. R. Duff, our agent, to proceed to California and make such investigations of mines as he may see fit, and report. And, upon his recommendation, if satisfactory to a majority of the subscribers, we and each of us agree to raise the necessary amount of money proportionately, to put the property in working order. And we further agree to pay the sum of one hundred dollars each to defray said Duff's expenses to Calfornia; and further, upon Mr Duff's report should it be decided to erect machinery upon the property he may recommend, he agrees to leave the question of his salary open, to be decided when he shall have placed the mill and property in working order. And it is further understood, that each subscriber hereto is not bound for a sum to exceed five thousand dollars currency."

At the trial in the superior court, before *Putnam*, J., the plaintiff proved the execution of this instrument by the subscribers; and also put in evidence a letter addressed to and received by

him on the same day, signed by Maguire "for subscribers to agreement," the material parts of which were as follows :

" As you are about to take your departure for California with a view to prospecting and examining mining properties and reporting to us the result of your investigations relating to the purchase and working thereof, and as you are to be equally interested with ourselves in whatever property we may see fit to accept, it is due to you that you should be made acquainted as much as possible with our feelings and wishes in relation to the objects we have in view in employing you as our agent. It is the desire of all the gentlemen associated with you that you should be successful in finding a valuable property that will cost but little money, and it is expected of you that, before you report, you will visit the mines in various localities, and that you will avail yourself of the aid and opinions of one or more of the most competent and reliable judges of mining property before making the decision upon which you are to base your report. You cannot be too particular and specific in your report to give all the points upon which you base your decision." " You are aware from the repeated conversations you have had with us that in going into an enterprise of the nature specified herewith, our object is to obtain, with the least possible outlay, a large paying property, and that we do not wish to be subjected to any experimental scheme, or even to place our money in certain small paying investments. We are confident that there are abundant opportunities to secure properties that will return us from 50 to 100 per cent. per annum on our money, and it is such as these that it is desirable you should secure." " The matter of your compensation is to be left to be arranged in the future. All it is necessary for us to remark in this connection is that we are disposed to do justly by you and pay you as well as others are paid occupying similar positions, and assure you we cannot believe there will be any difficulties arising upon this point. In corresponding with us you will please address your communications to Mr. Maguire. In conclusion, you are to understand that whatever property we decide to accept, it is with the understanding that you are to act as general superintendent and chief manager."

The plaintiff further introduced evidence tending to show that on June 15, when he accepted the appointment of agent, and received the letter of instructions signed by Maguire, " there was also placed in his hands the sum of five hundred dollars for his expenses to California, and that he was at the same time told to keep a correct account of his expenditures, and whatever they should exceed said sum should be allowed and paid;" that the five hundred dollars thus placed in his hands was contributed in equal sums by the five defendants; that he went to California and reported from there to the defendants concerning several mines, none of which were acceptable to a majority of the subscribers of the instrument of June 15; and that finally, on receiving notice that the whole project was abandoned, he returned to Boston. He also put in evidence a letter, dated September 20, 1866, addressed to him in California, and signed by Maguire " for Company," alluding to the receipt of letters and a telegram from him dated in August; reciting a telegram addressed to him in reply, thus: " Company decline accepting, operation too extensive, decided to abandon scheme entirely, particulars mail;" and continuing as follows:

" As it was the universal opinion of the subscribers to the document authorizing you to proceed to California and select a mining property, that your selection, though undoubtedly in many respects an excellent one, would involve a much larger eventual outlay than they were prepared or desired to assume, and partook too much of the nature of an experiment," " it was deemed advisable to abandon the scheme entirely. That the course the Company have taken will be some disappointment to you we are well aware, and regret you could not have found a property conforming more closely to the ideas of the Company, as expressed in the document appointing you agent. By steamer of 11th August from New York, went out Mr. W. H Adams and Mr. John Kennan, both of whom will probably see you and examine the property in question, and should their views coincide fully with yours as to the value of the property, and they should advise the Company here that the purchase would prove a satisfactory one to them, it is quite probable the

Company might be induced to accept the property, if obtainable on same or perhaps better terms than those enumerated in your letters. We may expect to hear from Messrs. Adams and Kennan in all this month, and your brother, who is now here, will write you to-day, and may explain more satisfactorily to you the feelings of the Company here on this subject. We shall wait on you with further correspondence, if circumstances require."

The judge refused the following ruling requested by the defendants : " That the plaintiff cannot recover of the defendants, in an action at law, for his services as agent, under the contract of June 15, 1866, or for money expended by him as such agent ; but his claim for such services and expenditures can be enforced only in a court of equity," and ruled to the contrary. The jury returned a verdict for the plaintiff for $2760.89 ; with a special finding that they assessed $1800 for his services, and the balance for his expenditures ; and the defendants alleged exceptions.

*T. M. Hayes,* for the defendants.

*C. Allen & W. G. Colburn,* for the plaintiff, cited Met. Con. 131 note, 132, 309, 310, and cases there cited; *Wiggin* v. *Cumings,* 8 Allen, 353; *Hunt* v. *Rogers,* 7 Allen, 469; *Shattuck* v. *Lawson,* 10 Gray, 407 ; *Sikes* v. *Work,* 6 Gray, 434; *Dickinson* v. *Williams,* 11 Cush. 260; *Fanning* v. *Chadwick,* 3 Pick. 420 ; *Dickinson* v. *Granger,* 18 Pick. 315; *Shepard* v. *Richards,* 2 Gray, 424; *Williams* v. *Henshaw,* 11 Pick. 82.

HOAR, J. The court are of opinion that, by the plain import and just construction of the contract signed by the plaintiff and the defendants on June 15, 1866, they associated themselves together as a company, for the purpose of purchasing and managing mining property in California. The plaintiff was appointed agent of the company, to go to California and select the property ; which, if his recommendation should be satisfactory to the majority of the associates, was to be purchased and worked under his superintendence, at a salary to be afterward agreed on. He agreed, with the others, that each of the six associates should contribute equally to the capital required a sum not exceeding five thousand dollars for each. It was

agreed that each should pay one hundred dollars to defray the plaintiff's expenses as agent, and the five defendants paid each one hundred dollars. The plaintiff was assured that whatever his expenses might exceed five hundred dollars should be allowed and paid.

The contract thus created does not seem to us to have been varied by the letter of instructions which he carried with him to California, nor by the other letter addressed to him at a later period. The letter of instructions says, " You are to be equally interested with ourselves;" and speaks of " the desire of all the gentlemen associated with you." Though the letters give directions to him as an agent, they are written in behalf of the company and the subscribers to the agreement, of whom the agent was himself one. The last letter indeed speaks of " the universal opinion of the subscribers," and of " the general feeling," which would apparently refer to the defendants exclusively; but in another passage it speaks of explaining the feelings of " the company here," which implies that his association with them was still recognized.

It is the common case of partners in a common enterprise employing one of their number in a particular part of the business, with a stipulation as to his separate compensation; but the contract with him is the joint contract of all the partners, himself included. The responsibility for the expenses incurred and the services rendered by the plaintiff as agent was therefore one which rested upon the whole company; and although his agency was the only part of the partnership business which was ever actually transacted, the settlement of the accounts is still a matter of equity jurisdiction exclusively. *Myrick* v. *Dame*, 9 Cush. 248.

But the plaintiff contends that the partnership, if one existed, has been dissolved, and that nothing remains to be done to settle the partnership affairs but to ascertain and pay the balance due him; and that under such circumstances an action at law may be maintained.

The answer to this suggestion is, that it does not affirmatively appear that the partnership had incurred no other expenses, and

that no other accounts remain to be settled. But if this should be made to appear, the difficulty remains that these defendants have no contract with the plaintiff which is obligatory upon them jointly. He made no agreement that the other five should pay him, but that the whole company should do so, including himself among the promisors. The liability of each member to contribute his share to the discharge of a partnership debt, or to reimburse to one what he may have paid beyond his just proportion, is a separate and not a joint liability. Neither of the five defendants is answerable to the plaintiff for the other four. A joint judgment at law cannot therefore be rendered against them upon this cause of action. All the cases cited for the plaintiff are cases in which there were but two partners, or where there was an express promise to one by the other partners jointly; and we are not aware of any case in which the doctrine has been carried farther to sustain an action at law, nor do we see how it could be consistently with settled principles. The plaintiff's remedy is in equity, and the verdict for him cannot be supported.                                        *Exceptions sustained.*