THEODOSIA SCOTT *vs.* EDWARD S. RAND, JR., & another.

Suffolk. March 26. — April 13, 1874. AMES & DEVENS, JJ., absent.

A. reciting that his wife B. was under guardianship as an insane person, and that he was minded to set apart certain property, "the income to be paid to the guardian" of B. during the lifetime of A., so that in any event of fortune a comfortable support and maintenance will be secured to B. during the lifetime of A., conveyed certain property to C. in trust "to pay to the guardian" of B. for the time being a certain sum, during the life of A.; "the receipt of the said guardian to be a full acquittance to the said trustee for any payments." The indenture then provided for the disposition of the trust in case of the death of B. living A., and in case of the death of A. living B., and that if B., "her guardian for the time being, or any person authorized by her, or acting in her behalf," should commence legal proceedings against A. in relation to certain property, the income should be withheld, and if the proceedings continued for two years the trust should cease. B. was afterwards discharged from guardianship and declared sane, and C. conveyed the trust property to A. *Held*, that the trust continued notwithstanding the discharge from guardianship.

BILL IN EQUITY brought by Theodosia Scott, suing by her next friend, against Edward S. Rand, Jr., and Charles Scott, alleging :

That the plaintiff was the wife of the defendant Scott; that in 1862, she was adjudged by the Probate Court for the county of Middlesex to be an insane person ; that in September, 1871 the plaintiff filed a petition in said Probate Court, praying to be discharged from guardianship, and that she was discharged from guardianship by an order of said court in January, 1872; that the defendant Scott took an appeal from said order, which appeal was waived May 7, 1872, and the decree of the Probate Court affirmed May 14, 1872.

The bill then set forth an indenture of trust signed and sealed by the defendants April 21, 1871, the material parts of which are as follows :

"Whereas Theodosia Scott, the wife of the said Charles Scott, has been adjudged an insane person, and is now as such under

the guardianship of William A. Herrick, of the saia Boston, who succeeded Isaac Holt, of Cambridge, in the said trusts : and whereas, in time past, while the said Theodosia was under the guardianship of the said Holt, the said Charles Scott sold and conveyed certain parcels of real estate situated chiefly in Newton in said State of Massachusetts, in which parcels of land the dower and homestead rights of the said Theodosia were duly released by the said Holt, guardian, under order had by virtue of licenses from the Probate Court for the county of Middlesex and State of Massachusetts ; and whereas the said Charles Scott has always provided liberally for the maintenance and support of his said wife, the said Theodosia, and is now minded and disposed to set apart certain property, the income thereof to be paid to the said guardian of the said Theodosia during the lifetime of him, the said Charles, so that in any event of fortune a comfortable support and maintenance will be secured to her the said Theodosia, during the lifetime of the said Charles : now therefore this indenture witnesseth, that in consideration of the premises and of one dollar to him paid by the said Edward S. Rand, Jr., the receipt whereof is hereby acknowledged, the said Charles Scott does hereby assign, transfer, set over and convey to the said Rand, and his heirs and assigns forever, the following securities and evidences of property, namely, (naming them.) To have and to hold the same to him, the said Rand, and his heirs and assigns forever ; but in trust, nevertheless, to hold, manage and invest the same in productive real or personal estate, at his discretion, with full power to sell and convey any real estate of which the trust estate may at any time be composed, to receive the income and profits thereof, and after the payment of all taxes and expenses incurred in the management of said trust estate, to pay over to the guardian of the said Theodosia for the time being, the sum of one thousand dollars per annum, in equal quarterly payments, beginning on the first day of July, 1871, during the life of him the said Scott ; the receipt of the said guardian to be a full acquittance to the said trustee for any payments ; and the residue of the said net income of the said trust fund remaining after the payment of the said sum of one thousand dollars to said guardian as aforesaid, if any such there be, to account for and pay over to the said Charles Scott, or in such manner as he may

direct, at least once in each and every year during the contin-uance of this trust. And in further trust, upon the decease of the said Theodosia, living the said Charles, to transfer, pay over and convey the said trust fund, with any accumulated income, to him the said Charles, to hold to him and his heirs and assigns forever, free and discharged from all trusts. But if the said Charles shall decease during the lifetime of the said Theodosia, then in trust to transfer, pay over and convey the said trust estate in such manner, to such uses and purposes, and for such estates, as he the said Charles Scott shall by his last will and testament direct and appoint ; and in default of such appointment, to trans-fer, pay over and convey the said principal or trust fund, with any accumulated income, to his heirs at law, free and discharged from all trusts. And the said Charles Scott hereby covenants and agrees to and with the said Rand and his successors in the said trust, that should the net income received from the said trust estate in any year fall below the said sum of one thousand dollars, he the said Scott will make up such deficiency to the said trustee ; the intent of this provision being, that the said Theo-dosia shall in each and every year receive the full sum of one thousand dollars. But if the said Theodosia, her guardian for the time being, or any person authorized by her or acting in her be-half, shall at any time commence legal proceedings against the said Charles Scott, for or on account of the real estate heretofore sold by the said Charles, and in which the dower of the said Theodosia was released as aforesaid, then and in that event, the said trustee is to withhold all payments of income until such time as such proceedings shall have been wholly discontinued. And in the event of the said proceedings continuing more than two years, the said trustee shall pay over the whole of the said prin-cipal or trust fund, with all accumulated income, to the said Charles Scott, and this trust shall thereby be terminated. And the said Rand hereby accepts the said trust, and in consideration of the premises, covenants to and with the said Charles Scott, that he will faithfully discharge and perform the duties enjoined upon him by this indenture. It is hereby understood and agreed, that the said trustee shall not be held liable for any loss or depre-ciation of the said trust estate not occasioned by his fault, but only for wilful negligence and default."

The bill also alleged that on May 6, 1872, the defendant Rand, without right, and in violation of the terms and obligations of his trust as set forth in said indenture, paid, transferred and delivered over all of said trust property and funds to said Scott, and without notice to the plaintiff ; and that the said Rand had ever since wholly neglected and refused to pay to the plaintiff the sum of one thousand dollars per annum, or any sum whatever.

The defendants demurred to the bill, and assigned the following grounds of demurrer :

1. That the plaintiff hath not in and by her said bill made or stated such a case as doth or ought to entitle her to any such relief as is thereby sought and prayed for from or against the defendants.

2. That, by the true legal construction of said indenture of trust, said trust terminated on the discharge of the said plaintiff from guardianship.

3. That said bill of complaint does not allege any demand made upon the defendant Rand, by any guardian of said Theo dosia Scott, since the time when said bill alleges that said plaintiff was discharged from guardianship.

4. That it appears by said indenture that the defendant Rand only agreed to pay to the guardian of said plaintiff the income of said trust property in quarterly payments, after payment of all taxes and expenses incurred in the management of the trust fund, to the extent of one thousand dollars per annum ; and that the bill does not allege that the income of the trust fund in any one year exceeded the taxes and the expense of the management of the trust fund.

5. That it appears by the indenture of trust that it was understood and agreed that the defendant Rand should not be held liable for any loss or depreciation of said trust estate not occasioned by his fault, but only for his wilful negligence and default ; and that the said bill of complaint does not allege that there was any wilful negligence or default on the part of this defendant.

At the hearing before *Endicott*, J., on the bill and demurrer, the demurrer was overruled, and the defendants appealed to the full court.

*J. Lathrop*, for the defendants. 1. The question is not one of intent, but whether by the terms of the trust, it was to continue

in case of the discharge of the plaintiff from guardianship. It appears by the bill, that at the time the indenture of trust was made, the complainant was under guardianship as an insane person. The property, the subject of the trust, belonged to her husband. He conveyed it to the defendant Rand, upon certain trusts, and Rand took it upon those trusts. Those trusts are specified in the indenture, and the court has no power to compel the trustee to do anything which he has not consented to do, or to consider him in default for not doing that which he has not agreed to do. The court cannot enforce a trust contrary to the expressed will of the creator, or to imply that if a certain state of facts had been thought of, a certain covenant would have been made. " It is a fundamental proposition that equitable estates are governed by the same rules as legal estates, otherwise inextricable confusion would ensue." Perry on Trusts, §§ 329, 357. When the legal estate is conveyed to a trustee, and a trust is declared as to a part only, nothing being said as to the rest, what remains undisposed of results to the original owner. In the same manner where the whole of an estate is conveyed for particular purposes, or on particular trusts only, which, by accident or otherwise, cannot take effect, a trust will result to the original owner. 1 Greenl. Cruise, 362 (395). See also *In re Ward's Trusts*, L. R. 7 Ch. 727 ; *Dodson* v. *Ball*, 60 Penn. State, 492 ; *Easterbrooks* v. *Tillinghast*, 5 Gray, 17.

2. As a question of intent, the operative part of the indenture conveys certain personal property to the trustee. He is to receive the income and profits, and, after payment of all taxes and expenses incurred in the management of the trust, " to pay over to the guardian of the said Theodosia for the time being the sum of one thousand dollars per annum, in equal quarterly payments, beginning upon the first day of July, 1871, during the life of him, the said Scott, the receipt of the said guardian to be a full acquittance to the said trustee for any payments," the residue, if any, to be paid to Charles Scott. The only covenant on the part of Rand is near the close of the indenture. " And the said Rand hereby accepts the said trust, and in consideration of the premises covenants to and with the said Charles Scott, that he will faithfully discharge and perform the duties imposed upon him by this indenture." He agrees therefore to pay to the guardian, not to

the plaintiff ; the receipt of the guardian is to be his discharge, not the receipt of the plaintiff. The phrase " during the life of him, the said Scott," cannot be construed as enlarging the duration of the trust, or as imposing any liability upon the trustee to pay to Mrs. Scott. Then there is a provision for the termination of the trust by the death of Theodosia living Charles, and also for the termination by the death of Charles living Theodosia. It is true that there is no express provision that the trust shall terminate on the wife being discharged from guardianship, nor is there any provision that it should continue ; but there is no need of any such provision, as the preceding clause only recognizes payment to the guardian ; and if there is no one to whom the trust has directed payment, or to whom the trustee has agreed to pay, the trust fails. Then there is a clause whereby Charles Scott agrees that if the net income in any one year is less than one thousand dollars, he will supply the deficiency, but this cannot operate to prolong the trust. The language is, " The intent of this provision being that the said Theodosia shall in each and every year receive the full sum of one thousand dollars." This must mean every year during the continuance of the trust. The expression " each and every year " cannot make the term of the trust longer or shorter than it would otherwise be. Then there is a provision for terminating the trust in case of legal proceedings against Charles Scott in respect to the release of dower by the guardian. It is true that this mentions legal proceedings by the plaintiff, and it may be contended that no suit can be brought by an insane person, and hence that the deed contemplated the plaintiff becoming sane. But a suit may be brought by an insane person in his own name. Such a proceeding is not absolutely void. If the fact is called to the attention of the court, the suit may proceed by the appointment of a guardian *ad litem*, or a next friend. *Denny* v. *Denny*, 8 Allen, 311. The object of this was, doubtless, to prevent vexatious proceedings by the guardian, or any one else. There is nothing here that can add to or limit the duration of the trust.

At the time the indenture of trust was made, the parties stood in this relation. The husband, so long as the insanity of the wife continued, was liable to the guardian for such reasonable sums of money as he should expend in the support of the wife. When

the insanity should cease, this liability would cease, and the hus-
band and wife would have the same respective rights and obliga-
tions as existed previously.  It was on account of the insanity of
the complainant, and on account of a guardian having been ap-
pointed, that the deed was made.  This state of facts has ceased.
Why, then, should the instrument be construed as giving to the
wife one thousand dollars a year, when the creator of the trust
has declared that the money should be paid to the guardian and
the trustee has only covenanted to pay the money to him ?  To
give the deed such a construction would be to impose obligations
upon the creator of the trust and upon the trustee, which neither
assented to.

3. The trust being an executed trust to be governed by the
strict rules of property, the plaintiff has no rights here.  She is
nowhere named as the *cestui que trust*.  To consider her as a
*cestui que trust* would expose the indenture to the objection that
a trust was engrafted upon a trust.  *Rich* v. *Rogers*, 14 Gray, 174.
The *cestui que trust* is the guardian.  There is nothing in the
trust deed to oblige the guardian to pay the money to the plain-
tiff.  She is not a party to the deed, and there are no covenants
on the part of the guardian.  While the guardianship lasted, he
was obliged, as guardian, to devote the money to the care and
support of the plaintiff ; but this resulted from the nature of his
office.  He was under no obligation to pay the money to her, but
only to devote the money to her care and support.  The trustee,
by accepting the trust, and agreeing that he would faithfully per-
form the duties imposed upon him, did not agree to perform any
other duties than those which the instrument creating the trust
imposed upon him.  There can be no breach on the part of the
trustee in not paying money to the plaintiff which he has not
agreed to pay.  His only covenant is to pay to the guardian.
The guardian is discharged and there is no successor appointed.
There is no one to whom he can pay.  The trust is then at an
end, unless the trustee is bound to hold the fund, letting it accu-
mulate until the death of the defendant Scott, and then to pay it
to such persons as he, by his last will and testament, shall appoint,
or to his heirs, in default of appointment.  But the purpose of the
trust having failed, there is a resulting trust in favor of the creator
of it.  The fact that the legal estate is fully in the trustee can

make no difference. A limitation to a trustee, his heirs and assigns, conveys to him no greater estate than the proper execution of the trust requires. Perry on Trusts, § 312.

*A. E. Pillsbury*, for the plaintiff, was not called upon.

COLT, J. It is contended in support of the demurrer that the trust created by the indenture signed by the defendants, so far as it relates to the plaintiff, terminated with her release from guardianship. The terms of the trust must be ascertained by applying to this instrument the usual rules of interpretation, and we are of opinion that the plaintiff is entitled to the benefit of the provision in her behalf, without reference to the continuance of the guardianship under which she had been placed.

The indenture expressly provides that the trust shall terminate upon the death of Mrs. Scott during the life of her husband, or upon the death of Scott during the life of his wife, or upon the continuance for two years of legal proceedings against Scott, instituted by the plaintiff, " her guardian for the time being, or any person authorized by her or acting in her behalf," on account of certain real estate sold by him in which the wife's homestead and right of dower had been released by a former guardian. No other termination is provided for, and no intention to control these provisions can be implied from the clause requiring the trustee to pay to the guardian of the plaintiff for the time being, the income secured to her, and making the guardian's receipt a full acquittance to the trustee for such payment. The clause has reference to the fact that the plaintiff was then under guardianship as an insane person, and to a present incapacity which made it necessary that all payments should be made to her guardian. All the other provisions and recitals are consistent with this interpretation. It is declared to be the intention to secure to the plaintiff in any event of fortune a comfortable support and maintenance during the lifetime of the husband. Full directions are given as to the disposition of the fund upon the death of either, or in the event of the litigation named. The clause in reference to such litigation plainly implies that the plaintiff, although released from guardianship, shall continue to enjoy the benefits of the trust unless legal proceedings have already been commenced by her guardian, or are afterwards commenced by her. The principal causes of demurrer are thus disposed of.

As it appears by the allegation in the bill that the trustee has wrongfully paid over the entire fund to Scott, it is unnecessary to allege a balance of income remaining in his hands after payment of taxes and expenses incurred in the management of the fund.

It is not necessary to allege that the conduct of the trustee amounted to "wilful negligence or default," where the act charged appears to have been intentional, and to have been in violation of the terms of the trust.      *Demurrer overruled.*