HENRIETTA FOWLE *vs.* ELBRIDGE TORREY & another.

Suffolk. March 27, 1882; April 2. — May 3, 1883.

If a married woman lends money out of her separate estate to a partnership, of which her husband is a member, and on the dissolution of which it is agreed between the partners that the partner other than the husband shall take the assets of the firm and pay all the liabilities and indemnify his partner against them, but no promise is made by the other partner to pay the debt to the wife, no trust is impressed upon the money so lent by her; and she cannot maintain a bill in equity against the two partners for the payment of the same. FIELD & W. ALLEN, JJ., dissenting.

BILL IN EQUITY, filed January 24, 1880, against Elbridge Torrey and George E. Fowle, alleging that the plaintiff is the

wife of George E. Fowle, who, with Torrey, formed a copartner-
ship under the style of Fowle, Torrey & Company, as dealers in
carpets in Boston; that she deposited with or lent to said firm
different sums of money, all from her separate estate, at differ-
ent times, from September 1, 1869, until the dissolution thereof,
taking generally, at the times of such loans, the notes or receipts
of the firm for the money, the firm promising to pay her back
the same, or any portion thereof, on demand, with interest
thereon at eight per cent per annum; that an account of said
dealings with the firm, including debits, credits and interest, up
to April 27, 1876, was furnished by Torrey to the plaintiff,
showing a balance due to her on that date of $2881.79, and
interest from June 30, 1875, which she believes to be correct;
that, at the dissolution of the firm, Torrey took all the assets
thereof, which he told the plaintiff were largely in excess of the
liabilities; that she is informed that all the liabilities of the
firm, excepting her claim, have been paid; that, after the dis-
solution of the firm, she requested Torrey to pay her claim;
that he admitted his liability to pay her claim, and at no time
refused to pay the same, and requested her to give her notes to
George E. Fowle for the purpose of payment, which she did,
believing that Torrey would pay them; that subsequently Tor-
rey said he had the notes, that they had been paid and allowed
in his settlement with George E. Fowle, who was largely in-
debted to the firm and to Torrey individually, and that all
Torrey's liability to the plaintiff had been discharged by George
E. Fowle, who had appropriated the money due to the plaintiff
in the settlement of his liability to Torrey, all of which was
without the plaintiff's consent or knowledge; that the plaintiff
has since repeatedly demanded of Torrey her notes, or the pay-
ment of her claim; which he refuses, on the ground that he,
has settled and paid the same to George E. Fowle, and is under
no liability to the plaintiff; that the plaintiff is informed and
believes that, in the settlement claimed to have been made be-
tween Torrey and George E. Fowle, it was agreed between
them that Torrey should assume and pay all the liabilities of
the firm, and indemnify and hold George E. Fowle harmless
against them, and Torrey should have as his own property any
assets there might be over and above the liabilities, in which

assets George E. Fowle should have no interest whatever; and that George E. Fowle has now no interest whatever in the assets of the firm.

The prayer of the bill was that the defendants might be ordered to state a full and correct account of the moneys received by them, either alone or as members of the firm of Fowle, Torrey & Company, from the plaintiff; and that Torrey be ordered to pay the amount due, with interest, to the plaintiff; and for general relief.

The defendant Torrey demurred to the bill, assigning as grounds of demurrer : 1. That the plaintiff has a complete and adequate remedy at law. 2. Want of equity. The defendant Fowle answered, admitting that all the allegations of the bill were true. Hearing upon bill, demurrer and answer before *W. Allen,* J., who reserved the case for the consideration of the full court.

The case was argued in March 1882, by *J. Nickerson,* for the plaintiff, and by *A. S. Wheeler & J. H. Young,* for Torrey ; and was afterward submitted on briefs to all the judges.

DEVENS, J. The plantiff does not assert that any special promise was made to her by Torrey to pay the debt incurred by Fowle and Torrey. If so, she would apparently have a remedy complete and adequate, which should be pursued at law. *Fowle* v. *Torrey,* 131 Mass. 289. Nor can the bill be maintained upon the ground that she has given up the notes she took for the loan made to Fowle and Torrey. If of value and wrongfully detained by Torrey, her remedy would be complete by an action of trover. But they were not of value; they did not constitute the evidence of any binding contract, as none such could be made between husband and wife. A promissory note given to a wife by a partnership of which her husband is a˘ member is void. *Kenworthy* v. *Sawyer,* 125 Mass. 28. *Roby* v. *Phelon,* 118 Mass. 541, 542.

While the Legislature has removed from a wife many of the disabilities she was under at common law, and has authorized her to hold property as a feme sole, to deal with it as such, and to sue and be sued in relation thereto, it has carefully provided always, in the acts by which this has been done, that nothing therein contained shall be construed as authorizing contracts

between husband and wife, conveyances or gifts to each other (except by the husband to a limited amount), or as giving the ᴛ‿ght to either to sue or be sued by the other. Gen. Sts. *c.* 108, § 1. Sts. 1874, *c.* 184; 1879, *c.* 133. Whatever rights they had in these respects remain as they stood at common law before this legislation commenced.

The contention of the plaintiff is, that, as the money lent was her separate estate, if there are sufficient assets in the hands of Torrey to discharge her claim, those assets are to be treated as belonging to her. But, upon the case as presented, there are no elements upon which it is possible to raise any trust in her favor. No separate property of hers has passed into the hands of Torrey or of the firm by fraud, or without her consent, or with her consent, upon any agreement or understanding that it was to be held or kept as her separate property. The relation between the firm and herself was that of borrower and lender simply, and no trust was impressed upon the money which it received.

That no suit at law could be maintained upon these notes, or for the amount of the loan which they represented, must be conceded. *Lord* v. *Parker*, 3 Allen, 127. *Lord* v. *Davison*, 3 Allen, 131. *Edwards* v. *Stevens*, 3 Allen, 315. *Turner* v. *Nye*, 7 Allen, 176, 182. *Bassett* v. *Bassett*, 112 Mass. 99. Where a contract is clearly invalid at common law, to permit it to be made the foundation of a suit in equity would be to disregard well-established principles and obligations. A court of equity cannot furnish remedies for the breach of contracts which are themselves not authorized, and thus impart to them validity. *Merriam* v. *Boston, Clinton & Fitchburg Railroad*, 117 Mass. 241. *Richards* v. *Delbridge*, L. R. 18 Eq. 11. *Hoare* v. *Contencin*, 1 Bro. C. C. 27.

Nor, upon the allegations, is the husband merely a formal party to the bill. His interests are directly involved in its discussion. It is averred that Torrey admits that he had the notes of the plaintiff; that he asserts that they were paid and allowed in his settlement with Fowle, the husband; and that his liability had been discharged by the appropriation of the money due upon them by Fowle; and, further, that, in answer to the plaintiff's demand, Torrey has asserted that he has

paid and settled for the same with Fowle, and that he is under no liability to the plaintiff. That this transaction took place the bill does not deny, but asserts that it was without the knowledge or consent of the plaintiff. The bill then alleges an agreement between Fowle and Torrey, by which Torrey was to pay all the liabilities of the firm, to have all the assets there might be over and above the liabilities; and that Fowle was to have no interest in them, he being saved harmless from all the liabilities. It does not allege any agreement on the part of Torrey to pay the specific debt due the plaintiff.

The bill therefore asserts the claim of the plaintiff as against both defendants, while in one aspect, as between themselves, the whole sum is equitably due from the husband, while in the other aspect it is equitably due from Torrey.

But, apart from the consideration that the contract itself between the wife on the one side and the husband and Torrey on the other cannot be recognized as valid, the fact that, in any proceeding, whether in equity or at law, to enforce it, the husband would of necessity be made a party, is conclusive that such proceeding cannot be maintained. Where the husband is not a necessary party, as where a claim is asserted by the wife against his estate in bankruptcy, this latter difficulty does not arise. *In re Blandin,* 1 Lowell, 543. Where the wife becomes the owner of a valid claim against the husband, her right to enforce it is suspended during the coverture, even where the demand is such that she can, upon his decease, enforce it against his executors. The marital relation is such that the rights and remedies of creditors and debtors cannot be asserted between husband and wife while it continues. *Tucker* v. *Fenno,* 110 Mass. 311. *Cormerais* v. *Wesselhoeft,* 114 Mass. 550.

For these reasons, a majority of the court are of opinion that the entry should be                    *Bill dismissed.*

FIELD, J. I am unable to concur with the majority of the court. If this bill cannot be maintained, it is not suggested that the plaintiff has any remedy. The result is, that she has lost her money, because she lent it to a partnership of which her husband was a member. It may be assumed that the money lent was the separate property of the plaintiff, by virtue of the

statutes of the Commonwealth. These statutes have not authorized a married woman to make contracts with her husband, or to bring suits against him; and her authority, or want of authority, to do either remains as it was before the statutes were passed. In England, the separate estate of a married woman was originally wholly the creation of the court of chancery, and was not recognized by the courts of law. When the court of chancery created this separate estate of a married woman, it gave her rights of action in chancery to protect it even against her husband. This was inevitable, for it would be an anomaly to recognize rights of property and at the same time to refuse to the owner all civil remedies to protect it; and as the husband was in no sense under the dominion of the wife, but she was under his dominion, it was especially necessary that she should have the right to protect her separate estate from destruction or conversion by him. This separate estate of a married woman, as created by a court of chancery, existed in this Commonwealth before the passage of any statutes on the subject; and an active remedy by her against her husband, to recover it when converted by him to his own use, was given her by bill in equity in this court. *Ayer* v. *Ayer*, 16 Pick. 327.

Many statutes have since been passed establishing what shall be the separate property of a married woman, and these bind courts of law as well as courts of equity, and must receive the same construction in each court; and, since the passage of these statutes, the title of a married woman to her separate property may be a legal title or an equitable title, according to the nature of the property, in the same manner as the title of any other person to property. It is conceded that she cannot maintain an action at law against her husband for any injury to, or conversion of, her separate property, whether she holds it as her separate property by virtue of the statutes or independently of them. Whether, since the passage of the statutes, she has the same right to bring a suit in equity against her husband for any wrongful intermeddling with or conversion of the property which has been made her separate property by the statutes, as she has when the property is her separate estate independently of the statutes, has not been argued; but it may with good force be contended that the Legislature, in declaring that property acquired

in a certain manner by a married woman shall be and remain her sole and separate property, intended to give her for its protection generally the rights of action which by the settled course of proceedings in equity attach to the separate estate of a married woman.

In creating the separate estate of a married woman, the court of chancery in England originally gave her remedies for protecting this estate from the wrongful acts of the husband. There was not the same necessity that she should have remedies against her husband for any intermeddling with her separate estate which she had permitted, or on contracts which she had attempted to make with him. The rule in general was, that contracts between husband and wife were treated as a nullity in equity, as at law. To this rule there were, perhaps from the first, certain exceptions, which are immaterial to this case. It is said now that it has become established in England that contracts of loan made by a married woman with her husband out of her separate estate are in equity treated as valid. In determining how far this court will afford the remedies which are now afforded to married women by the court of chancery in England, independently of the recent English Married Women's Property Acts, regard must be had to the state of the English law at the time of the declaration of American independence, to our own statutes, and to our whole system of jurisprudence.

In *Atlantic Bank* v. *Tavener*, 130 Mass. 407, the court say: " The question whether a loan by the wife to her husband of money which is her separate property, upon his promise to repay it, creates an equity in her favor, which a court of chancery will enforce, has not been determined in this Commonwealth. *Snow* v. *Paine*, 114 Mass. 520, 527. *Brown* v. *Wood*, 121 Mass. 137, 139. But it has generally, if not uniformly, been decided in the affirmative by other courts."

At law, in this Commonwealth, a promissory note, as well as any other personal contract, between husband and wife, or between a wife and a partnership of which her husband is a member, is absolutely void. *Bassett* v. *Bassett*, 112 Mass. 99. *Roby* v. *Phelon*, 118 Mass. 541. *Ingham* v. *White*, 4 Allen, 412. A marriage between the maker and payee or indorsee of a

promissory note extinguishes the note. *Abbott* v. *Winchester*, 105 Mass. 115. *Chapman* v. *Kellogg*, 102 Mass. 246. But a marriage between a mortgagor and a mortgagee does not extinguish the mortgage, nor does the purchase of an equity of redemption by a wife or husband extinguish a mortgage to the husband or wife, but the right to foreclose the mortgage is suspended during the marriage relation. *Tucker* v. *Fenno*, 110 Mass. 311. *Bemis* v. *Call*, 10 Allen, 512. *Cormerais* v. *Wessel-hoeft*, 114 Mass. 550.

A conveyance of property through a third person by a husband to a wife, in consideration of a loan of money by her to him, is not a voluntary conveyance, and is valid against his creditors. *Atlantic Bank* v. *Tavener*, *ubi supra*.

Our law thus recognizes the equitable obligation of a husband to pay to his wife money lent out of her separate estate. Whether this obligation is one which a court of equity will enforce against him, or is only an imperfect obligation which will not be enforced against him, although, if he voluntarily satisfies it, the court will sanction and uphold what he has done, has not been determined. Can it be doubted that, if George E. Fowle, during the continuance of the partnership, had paid his wife out of its assets the amount of money lent by her, it would have been a good payment as against his copartner? If the obligation of the husband cannot be enforced by the court, it is because of the marriage relation.

It is conceded that a husband may be a trustee for his wife. *Robinson* v. *Trofitter*, 109 Mass. 478. *Walker* v. *Walker*, 9 Wall. 743. *Turner* v. *Nye*, 7 Allen, 176. *Ayer* v. *Ayer*, *ubi supra*. *Scott* v. *Rand*, 115 Mass. 104.

In *Turner* v. *Nye*, the money received by the husband was not the separate property of the wife. It was property in which the husband had the common-law rights, and when paid to him became absolutely his property.

In *Phillips* v. *Frye*, 14 Allen, 36, it did not appear that the money paid by the wife was her separate property, or that the husband, at the time the money was paid, made any agreement to repay it. If these facts had appeared, it must be considered that, since the decision in *Atlantic Bank* v. *Tavener*, it could not be held that the note to the trustee was without consideration.

In bankruptcy a wife may prove as a creditor against the estate of her husband for money lent him. *In re Blandin*, 1 Lowell, 543. *In re Bigelow*, 3 Bened. 198. *In re Wood*, 5 Fed. Rep. 443. *In re Jones*, 9 Nat. Bank. Reg. 556. But in bankruptcy no remedies against the bankrupt are sought.

The following are cases in other jurisdictions in which a contract, express or implied, of the wife with the husband, has been enforced in equity against his estate. *Woodward* v. *Woodward*, 3 DeG., J. & S. 672. *McCampbell* v. *McCampbell*, 2 Lea, 661. *Towers* v. *Hagner*, 3 Whart. 48, 60. *In re Hinds*, 5 Whart. 138. *Johnston* v. *Johnston*, 1 Grant, 468. *Kutz's appeal*, 40 Penn. St. 90. *Riley* v. *Riley*, 25 Conn. 154. *Marsh* v. *Marsh*, 43 Ala. 677. *Barton* v. *Barton*, 32 Md. 214. *Murray* v. *Glasse*, 17 Jur. 816. *Rowe* v. *Rowe*, 2 DeG. & S. 294. *Darkin* v. *Darkin*, 17 Beav. 578. *Slanning* v. *Style*, 3 P. Wms. 334. *Huber* v. *Huber*, 10 Ohio, 371.

In a proper case in equity, a wife may maintain a bill against her husband in order to obtain a decree against him. *Ayer* v. *Ayer, ubi supra.* *Scott* v. *Rand, ubi supra.* *Dixon* v. *Dixon*, 9 Ch. D. 587. *Wood* v. *Wood*, 19 W. R. 1049. *Black* v. *Black*, 3 Stew. Eq. 215. *Roberts* v. *Evans*, 7 Ch. D. 830.

It is conceded that this is a loan of money, and cannot be regarded as creating a trust in order to give a court of equity jurisdiction. It is said by Lord Chancellor Westbury, in *Woodward* v. *Woodward, ubi supra,* "It is quite clear that if money, part of the income of her separate estate, be handed over by her to her husband, upon a contract of loan, she may sue her husband upon that contract." It is admitted that this "is a remarkable instance of legislation by judicial decision, whereby the old common law has been entirely abrogated, and the power of the wife to contract with her husband has been established." No English case, however, has been cited, in which it was decided or declared, prior to the declaration of American independence, that a wife could sue her husband in equity upon a contract of loan made to him out of her separate estate. There is no such decision in this Commonwealth, and it is not to be denied that, in enacting the various statutes relating to the separate property of a married woman, it was not the intention of our Legislature to enable her to lend money to her husband, and to enforce

against him his promise to pay it by a suit in equity, as freely as she could enforce a similar promise against another person by an action at law. It may well be doubted whether in this Commonwealth any such equitable right of action exists, and it may be assumed that the plaintiff cannot maintain this bill for the purpose of obtaining a decree against her husband personally for the payment of money lent.

It is an insuperable objection to any action at law by the wife, that the husband is or must be made a party defendant. The writ must necessarily abate. But this is no objection in equity if the subject matter is one which equity recognizes as the foundation of a suit.

Another ground on which it has been decided that a married woman cannot maintain an action of contract at law against partners, of whom her husband is one, is that, as she cannot contract with her husband, she cannot contract with the other defendants jointly with him. *Edwards* v. *Stevens*, 3 Allen, 315. This is a good answer to an action at law, and does not greatly differ from the objection to an action at law by one person on a contract made by him with a partnership of which he is a member, or on a contract made by him with other persons jointly with himself. At law a man cannot contract with himself, and so he cannot contract with himself jointly with other persons; but such quasi contracts can be enforced in equity. *Duff* v. *Maguire*, 99 Mass. 300, and 107 Mass. 87. *Terry* v. *Brightman*, 132 Mass. 318, and 133 Mass. 536. Story on Part. §§ 234 & seq.

It is no defence to an action at law against joint defendants that one was a married woman and so not bound; judgment is entered against the other defendants. And in a suit on a bond which the defendant signed as surety with the wife of the principal obligor as co-surety, if the surety knew that she was the wife of the principal when he signed it, he is bound, although the wife is not bound, by reason of her coverture. *Yale* v. *Wheelock*, 109 Mass. 502. In an action at law, it is no defence to one of two joint promisors, that the other was an infant and has avoided his contract by pleading and proving his infancy. *Woodward* v. *Newhall*, 1 Pick. 500. *Tuttle* v. *Cooper*, 10 Pick. 281, 291.

It would have been no great stretch of legal principles to have held that at law, when a married woman makes a contract in reference to her separate property with other persons jointly with her husband, all the joint contractors except her husband are bound to her, and that she can maintain an action against them, if they knew of the coverture at the time they made the contract; but, if this is settled otherwise, not only on the ground that the husband must be made a party defendant, but also on the ground that the husband is incapable of contracting with his wife, and she, as plaintiff, is incapable of making a contract with her husband jointly with others, still there remains the analogy of a contract made by one person with himself and others, which, although not strictly speaking a contract, gives rise to obligations which may be enforced in equity.

If the marriage relation is a defence to the husband, a third person ought not to be permitted to set up that relation as a defence to his obligation, which in equity is separate as well as joint. It may well be that, if a husband is not personally liable in equity on a promissory note given by him jointly with another person to his wife, for money lent out of her separate property, the other promisor is not necessarily liable for the whole amount of the note. If the husband would be liable to his co-promisor, in whole or in part, if the latter paid the note, it might be considered a mere evasion of the principle of law to hold that the wife could collect the whole amount from him, and that he could then collect of the husband the whole or a part of that amount. There is a manifest difference between a note so signed, in which the husband is the principal debtor, and one in which he is only a surety. It is on this ground that a suit in equity can work out substantial justice. It can determine in this case, as between the two defendants, what proportion, if any, of the money which the plaintiff lent to the firm Torrey ought personally to pay. The personal obligation of the husband, so far as his proportion is concerned, may be regarded as extinguished, and Torrey may be compelled to pay no more than he should have paid if the husband had voluntarily contributed his part.

*Lord* v. *Davison*, 3 Allen, 131, was an action brought by a married woman against the defendants on an agreement by

them to pay her one thousand dollars. The evidence was that she had invested her money in the stock, fixtures and materials of the firm of J. H. Lord & Company, of which her husband was a member. The defendants had purchased the stock and property of J. H. Lord & Company, and, as a part of the bargain, had promised to pay her $1000, and she had relinquished whatever right she had against the firm. The court say: " The presiding judge ruled that she did not become a partner in the firm of J. H. Lord & Company; and, as we have already decided in the case of *Lord* v. *Parker*, ruled rightly. He also ruled that the investment made her a creditor of the firm, and that she was not the owner of any part of the stock, fixtures and materials; but ruled further that her investment did not become the property of her husband, and declined to rule that she had no claim which she could enforce against the partnership in an action at law. We think these rulings were right, so far as they concerned the case on trial; and that the ruling which the judge refused to make, whether right or wrong, was immaterial. She invested her money under a written agreement with her husband and the other persons who composed the firm, by which it is obvious that she did not intend to give it to her husband, but to employ it for her own benefit, as her separate property. If she could not contract with her husband, she had rights against the other contracting parties, which were at least equitable, if not very well defined."

This bill was brought to enforce these equitable rights of the plaintiff against Torrey, and it must be admitted that they are not very well defined. George E. Fowle could not, without the authority of the plaintiff, discharge the liability of the firm to her, whatever that liability may have been, by any settlement he might make with Torrey. If this settlement was made by Torrey on the consideration that George E. Fowle should surrender and discharge the claim of the plaintiff, and this has not been done from lack of authority from the plaintiff, it may be that Torrey can avoid the settlement, and that his obligation to the plaintiff remains unaffected by his agreement to assume and pay all the liabilities of the firm. If Torrey now affirms this settlement, and claims as his own separate property what remains of the assets of the firm, it deserves consideration whether

under this agreement he ought not to pay the whole of the money lent by the plaintiff. If Torrey avoids this settlement, the assets of the firm which remain, if any, are still firm assets; and it deserves consideration whether a receiver may not be appointed, and these assets applied to the payment of the claim of the plaintiff. If there are no assets of the firm remaining, and the settlement between the partners is avoided, or, if not avoided, it is held that the rights of the plaintiff against Torrey are not enlarged by that settlement, then I think it should be determined what proportion, according to the articles of copartnership, as they existed at the time of the loan, Torrey was bound to contribute as between himself and George E. Fowle toward the payment of the debts of the partnership; and that the plaintiff is entitled to a decree for this amount against Torrey. If the plaintiff, when the loan was made, had the right to recover from Torrey personally the whole or a part of it, she could not lose this right by any obligations or agreements subsequently incurred or made between Torrey and her husband, to which she never assented. I think the demurrer should be overruled.

Mr. Justice William Allen unites with me in this dissent.