BRADFORD *against* KIMBERLY and BRACE.

One joint partner is not entitled, as against the others, to a compensation for his greater or more valuable services, in regard to the common concern, unless there be a special agreement to that effect.

But, where the several joint owners of a cargo appoint one of the part owners their agent, to receive and sell the cargo, and distribute the proceeds, he is entitled, under such special agency, to a commission, or compensation, for his services, as a factor, or agent, in the same manner as a stranger: and as such factor, or agent, he may retain the goods, or their proceeds, as security, not only for his advances, disbursements, or responsibilities, in regard to the particular property, but for the balance of his general account.

IN *August*, 1813, the defendants, *Abijah Weston*, *Benjamin Merritt*, and others, were joint owners of a vessel and cargo fitted out from *New-Haven*, *Connecticut*, to *Porto Rico*, where the cargo was sold, and the proceeds invested in a cargo of coffee, &c. shipped on board the brig *Edwardo*, consigned to *P. Harmony*, of *Newport*, where it arrived. *P. Weston* owned three-*eights* of the return cargo, and previous to its arrival at *Newport*, sold and assigned his interest to *Ralph Bulkley*, who, after the arrival of the cargo, to wit, on the 21st of *March*, 1814, assigned the three-eights thereof, so purchased by him of *W*. to the plaintiff, to whom he was largely indebted, as a security for the debt, and in trust to pay *John Clapp* 1,500 dollars, and to pay the defendants 1,220 dollars, and the residue to the plaintiff. The defendants paid to the plaintiff

*June* 18*th* and 19*th*, and *Sept.* 28*th*.

1,450 dollars, which he paid over to *Clapp.* On the 22d of *March,* 1814, the said return cargo came into the possession of the defendants, who, on the 25th of *March,* 1814, received notice of the assignment of *Weston's* share by *R. Bulkley,* to the plaintiff, but refused to deliver it. The share of *W.,* so assigned to *Bulkley,* and by him to the plaintiff, amounted to 5,800 dollars. The accounts between the defendants and the other owners, were adjusted, and paid by the defendants, who have in hand 3,000 dollars of the proceeds of *W.'s* share, which the plaintiff claimed under the assignment to him. The bill prayed that the defendants might account for the property so received by them, and assigned to the plaintiff, and may be decreed to pay over the balance to him, &c.

The answers of the defendants admitted the joint shipment and joint concern in the return cargo of the *Edwardo,* and that *W.'s* share was 600 parts of 1,634, and was so finally adjusted. That the cargo was consigned to *S.,* the master of the brig, who, on his arrival, placed it in the hands of *Harmony.* That the cargo arrived at *Newport,* in *December,* 1813, and the owners, in *January,* 1814, agreed to make the defendants their factors, agents, or commission merchants, for the disposal thereof, in *New-York,* and *S.* and *H.* were directed to deliver the same to the defendants accordingly. That a greater part of the cargo came into the hands of the defendants, on the 19th of *March,* 1814, not on the 22d of *March,* as the plaintiff had alleged; and another part came to *New-York,* to the defendants, the 9th of *May* following. That, on the 25th of *March,* 1814, notice was received by the defendants of the assignment by *Bulkley* to the plaintiff. That the nett amount of the share so assigned, is 3,946 dollars and 60 cents. That, previous to any knowledge of the assignment, *Bulkley* was indebted to the defendants; and after the cargo was received by them, they lent him their notes, which they afterwards paid, &c.; that, on the 29th of

*March*, 1816, they paid to the plaintiff 1,736 dollars and 55 cents. That *R. Bulkley* is indebted to the defendants, for a balance of accounts, in the sum of 2,000 dollars; and that he failed on the 21st of *March*, 1814, and became insolvent, which was known to the plaintiff before the assignment to him. The defendants insisted, that their advances and responsibilities for *Bulkley* having been made after the cargo came into their hands, they had a *lien* on the proceeds, for their security, for the balance due them from *B.*, and which could not be defeated or impaired by the assignment to the plaintiff.

Several witnesses were examined in the cause, which came on to be heard in *June* last.

*Wells*, for the plaintiff. He cited 7 *East*, 229. 9 *East*, 426. 3 *Bos. & Pull.* 494. 126. *Abbott on ships*, 96. 1 *Vesey*, 497. *Watson on Partn.* 139. *Weston* v. *Barker*, 12 *Johns. Rep.* 276.

*Boyd*, for the defendants. He cited *Comyn's Dig.* tit. *Factor.* *Cowp. Rep.* 251. 2 *East,* 227. 1 *Burr.* 489.

The cause stood over for consideration until this day.

THE CHANCELLOR. It appears in proof that the owners of the cargo of the *Edwardo*, in *January*, 1814, appointed the defendants their agents to receive and sell the cargo, and distribute the proceeds. The defendants were at the same time part owners; but this special agency was altogether distinct from their ordinary powers as part owners, and they were to be considered, for this purpose, as agents for the company; and in that character they were entitled to their commissions or compensation, in the same manner as any other persons, being strangers in interest, would have been entitled under such an agency. In the case of joint partners, the general rule is, that one is not entitled

1818.

BRADFORD
v.
KIMBERLY.

to charge against another, a compensation for his more valuable or unequal services bestowed on the common concern, without a special agreement; for it is deemed a case of voluntary management. This is the doctrine in the cases on this point. (*Thornton* v. *Proctor*, 1 *Anst.* 94. *Burden* v. *Burden*, 1 *Vesey and Bea.* 170. *Franklin* v. *Robinson*, 1 *Johns. Ch. Rep.* 157.) But where the several owners meet, and constitute one of the concern an agent, to do the whole business, a compensation is, necessarily and equitably, implied in such special agreement, and they are to be considered as dealing with a stranger. The defendants are, consequently, to be viewed as commission merchants to receive and sell the return cargo, and they are entitled to the rights belonging to that character.

If this conclusion be correct, there is then no doubt that the claim on the part of the defendants must be admitted. It is well settled, that a factor may retain the goods or the proceeds of them, not only for the charges incident to that particular cargo, but for the balance of his general account; and this allowance is made not only while the goods remain in *specie*, but after they are converted into money. This was the doctrine declared in *Kruger* v. *Wilcox*, (*Amb.* 252.) and afterwards, by Lord *Mansfield*, in *Godin* v. *London Assruance Company*, (1 *Burr.* 494.) and by Mr. J. *Buller*, in *Lickbarrow* v. *Mason*. (6 *East*, 23. *in notis*.) And it is further settled, that this lien applies not only for the amount of the money actually disbursed for the necessary use of the property in hand, and for acceptances actually paid, but for the amount of outstanding acceptances not then due. The factor may retain the goods, or the money into which they have been converted, until he is indemnified against the liability to which he had subjected himself. (*Hammonds* v. *Barclay*, 2 *East*, 227. *Drinkwater* v. *Goodwin*, *Cowp.* 251.) This is very equitable doctrine, especially when the acceptances and responsibilities

were assumed, or necessarily presumed to have been assumed, upon the credit of the property in his possession.

In this case, the accounts annexed to the answers are admitted to be correct; and it appears by them that at the date of the assignment from *Bulkley* to the plaintiff, he was indebted to the defendants for moneys advanced, or responsibilities assumed and afterwards discharged by the defendants, to more than his share of the nett proceeds of the goods committed to the disposal of the defendants, after crediting the plaintiff with what he has since received under that assignment. There was nothing due to the plaintiff when he filed his bill. It will be readily admitted, that the plaintiff took no other or greater right under his assignment, than what *Bulkley* possessed when he made it. It was made subject to all existing equities.

Bill dismissed, with costs.