## William R. Duff *vs.* James Maguire & others.

The plaintiff and the five defendants, by an instrument signed by them, reciting that, desiring to obtain and work a gold mine, they appointed the plaintiff their agent to go to California and make such investigations of mines as he might see fit and report, agreed that they would pay $100 each to defray his expenses to California, and that upon his recommendation, if satisfactory to a majority of the subscribers, they would raise proportionately the money necessary to put the mine in working order; and he agreed that, if it should be decided to work the mine he might recommend, he would leave the question of his salary open, to be decided when he should have placed the mine in working order. The subscribers also wrote a letter to him, in which they stated that it was expected of him to visit the mines in the various localities, and to avail himself of the aid of one or more of the most competent judges of mining property, before reporting; that he could

not be too particular in giving all the points upon which he based his decision; that the matter of his compensation was to be left to be arranged in the future; and that he was to understand that, whatever mine they should decide to accept, it would be with the understanding that he should act as the superintendent. The plaintiff went to California, and selected a mine; but the defendants then abandoned the undertaking. *Held*, that the plaintiff was entitled to recover five sixths of such a sum as would reimburse to ʌ̓m his fair and reasonable expenses, and be a fair compensation for his services, although the sum should exceed the amount raised by the payment of $100 each by the subscribers.

BILL IN EQUITY against James Maguire, Jeremiah Pritchard, Joseph Hobart, William H. Dunbar and John Wooldredge, praying for a decree to compel the defendants to contribute towards reimbursing to the plaintiff his expenses, and making a fair compensation to him for his services, incurred or rendered in a business undertaking. The case was reserved by *Ames*, J., on the bill, the answers, the report of a master to whom it was referred to find the facts, and the defendants' exceptions to his report, for the determination of the full court; and the material facts were as follows:

The plaintiff and the defendants signed this agreement on the date thereof: "Boston, June 15, 1866. We the undersigned, desirous of obtaining and working a gold property, do appoint Mr. W. R. Duff, our agent, to proceed to California and make such investigations of mines as he may see fit, and report. And upon his recommendation, if satisfactory to a majority of the subscribers, we and each of us agree to raise the necessary amount of money, proportionately, to put the property in working order. And we further agree to pay the sum of one hundred dollars each to defray said Duff's expenses to California; and further, upon Mr. Duff's report should it be decided to erect machinery upon the property he may recommend, he agrees to leave the question of his salary open, to be decided when he shall have placed the mill and property in working order. And it is further understood that each subscriber hereto is not bound for a sum to exceed five thousand dollars currency."

On the same day, the plaintiff received a letter addressed to him and signed by Maguire "for subscribers to agreement," of which the material parts were as follows: "As you are about to take your departure for California with a view to prospecting and

Duff *v.* Maguire.

examining mining properties, and reporting to us the result of your investigations relating to the purchase and working thereof, and as you are to be equally interested with ourselves in whatever property we may see fit to accept, it is due to you that you should be made acquainted as much as possible with our feelings and wishes in relation to the objects we have in view in employing you as our agent. It is the desire of all the gentlemen associated with you that you should be successful in finding a valuable property that will cost but little money, and it is expected of you that, before you report, you will visit the mines in the various localities, and that you will avail yourself of the aid and opinions of one or more of the most competent and reliable judges of mining property before making the decision upon which you are to base your report. You cannot be too particular and specific in your report to give all the points upon which you base your decision, such as the location and extent of the mine, width of the lead and quality of the ore, the amount of work that has been done on the mine, the title, cost of wood, water facilities, and every other favorable or unfavorable circumstance that you may learn in connection therewith. You will, of course, make a clear and explicit statement or estimate of the amount and cost of all the machinery that you may need to put the property in working and paying order, and probable time required to accomplish the work. You are aware from the repeated conversations you have had with us, that in going into an enterprise of the nature specified herewith our object is to obtain, with the least possible outlay, a large paying property, and that we do not wish to be subjected to any experimental scheme, or even to place our money in certain small paying investments. We are confident that there are abundant opportunities to secure properties that will return us from 50 to 100 per cent. per annum on our money, and it is such as these that it is desirable you should secure." " The matter of your compensation is to be left to be arranged in the future. All it is necessary for us to remark in this connection is, that we are disposed to do justly by you and pay you as well as others are paid occupying similar positions, and assure you we cannot believe there will be any difficulties arising upon this point. In corresponding

with us you will please address your communications to Mr. Maguire. In conclusion, you are to understand that, whatever property we decide to accept, it is with the understanding that you are to act as the general superintendent and chief manager." This letter was written with the assent of all the defendants, and $500 was subscribed by the defendants and delivered to the plaintiff on June 20, 1866.

The report found that the plaintiff consented to go, on the assurance that his expenses should be paid by the subscribers to the agreement, made by a person professing to be authorized by the defendants, but, in truth, not so authorized; that " the plaintiff sailed from New York for California June 21, 1866, and returned to New York about December 25, 1866, and during all that time was fully and properly employed in making the passages to and from California and in rendering services in California under the agreement and letter of instructions; that on his arrival in California he proceeded with diligence and in good faith, and with competent skill and judgment, to make investigation as to mining properties in different parts of the country, and personally to inspect numerous mines, for the purpose of selecting one which should be suitable for purchase and acceptable to his associates; and that in all his doings he conducted himself with entire fidelity to their interest."

The plaintiff in August 1866 recommended to the defendants by letter the purchase of three mining estates, but the defendants, on receipt of the letter, notified him by telegraph that the subscribers declined to accept the recommendation and decided to abandon the scheme entirely; and the report found that the defendants abandoned the scheme, not for the reason that the property recommended for purchase was not within the original scope of their association, but " because the defendants, from caprice, or from distrust of the plaintiff, or from a more mature and deliberate reflection, had determined not to invest in a mining operation under his direction."

The report found that the plaintiff's charges, " for the fair and reasonable expenses " incurred by him as agent for the subscribers, were correct, with the exception that $78.45 were expended

after he had notice of the abandonment of the scheme ; and that his services were worth $300 a month, or $1800 in all. The substance of the defendants' exceptions to the report appears in the opinion.

*C. Allen & W. G. Colburn,* for the plaintiff.

*A. A. Ranney,* for the defendants.

AMES, J. The agreement under which these parties have acted, although it left it entirely at the discretion of the subscribers, upon the receipt of the report which the plaintiff was to make, whether they would prosecute or abandon the contemplated mining operation, was an unconditional stipulation that the preliminary investigations in California should be made by the plaintiff on their joint account, and for their joint benefit. It must have been understood that this investigation would occupy a considerable length of time, and would be attended with considerable expense. The instructions to the plaintiff required that he should " visit the mines in the various localities ; " that he should obtain the opinion and aid of " competent and reliable judges of mining property ; " that he should make a thorough and careful examination, and should make a report, in which, he was told, he could not be " too particular and specific " in giving all the points upon which he should base his decision. He was to find a valuable property, and to furnish them with such information respecting it that they should be able to judge for themselves whether it would be for their interest to go on with the enterprise. The report finds that he accordingly went to California, and " proceeded with diligence and in good faith, and with competent skill and judgment," to execute his commission ; that his charges for his " fair and reasonable expenses " as such agent are correct, and that six months of his time were " fully and properly " occupied in making the journey and rendering the services required by his instructions. The association saw fit not to make the investment which he advised. It has had, however, the benefit of his services and expenditures, and should equitably be charged with them, unless some reason why they should not be so charged can be found in the terms of the association or in the letter of instructions, or in the legal relations of the parties to each other.

The defendants insist that the proper inference from the language of those documents must be, that the plaintiff was not entitled to anything on account of his expenses beyond the sum of $500, which they have already paid ; and that he was to receive no compensation whatever for his time and services in any event, unless a majority of the subscribers should accept the mining property which he should bargain for and recommend, and unless they should also determine to erect machinery upon the property and put it in working order. But we do not so construe the contract. The stipulation that they should pay the sum of $100 each was in order to defray his travelling expenses "to California;" and that sum was barely sufficient to pay the expense of travelling to San Francisco and back, leaving little or nothing for the expense of visiting the mines and doing the business which was the sole object of the journey. Under the contract, that amount was due on demand and in advance, before he had started on the journey. There is nothing that indicates that he was expected to keep his expenses within that sum, or that the expenses in California were to be at his exclusive cost, and it appears that he did not start upon the journey upon any such understanding. We see no ground whatever for the claim that the payment of $100 each was to be understood as relieving the defendants from any further payment, necessary to complete their equal and just proportion of the plaintiff's fair and reasonable expenses in the execution of his commission.

With regard to the compensation for the plaintiff's services, it is true that, with the exception of the general profession of a disposition to deal justly with him, and to have no difficulty on the subject, the only express promise refers to a state of things which has not arisen. If it should be decided to erect machinery upon the property which he should select and recommend, the question of his "salary" was to be left open, to be decided when he should have placed the mill and property in working order. The letter assures him that he should be paid as well as others occupying similar positions ; "whatever property we decide to accept, it is with the understanding that you are to act as the general superintendent and chief manager." It appears to us that all these

expressions must be understood as indicating what the association would be willing to do, if they should adopt the plaintiff's recommendation and go forward with the enterprise ; and that they do not refer and are not applicable to the contingency, which has actually occurred, of a breaking down of the scheme in consequence of their refusal to go on with it. The contract and the letter are both entirely silent as to what is to be done in that event. A promise to pay a regular salary to the plaintiff as the superintendent and manager of a proposed business, if it should be decided to go into it at all, does not necessarily import that, if the project should be given up, he is not to be paid for valuable services, rendered at their request, in obtaining and reporting the information upon which they are to found their decision. We find nothing in the contract or the instructions, which, either in express terms or by necessary implication, imports that the plaintiff was to work for nothing if the enterprise fell through. He undoubtedly expected to obtain the position of superintendent, if the scheme should be carried out, and was willing to risk something under that expectation ; but we see no ground for saying that he ever agreed to take upon himself more than his just and equal proportion of the loss, upon the failure of the enterprise.

The objection that one partner in a joint adventure cannot charge a compensation for his services in the joint business does not appear to us to be applicable to the case. The subscribers to the contract had not become partners in a joint undertaking when the plaintiff started on his journey, and it was wholly uncertain whether they would become so or not. It was thought necessary, before deciding that question, that certain information should be obtained and laid before them, and they accordingly made the plaintiff their agent to do the whole of that needful preliminary business. A compensation is necessarily and equitably implied under such a special arrangement, and they stand in the same position as if they had employed a stranger. *Bradford* v. *Kimberly*, 3 Johns. Ch. 431. *Bradley* v. *Chamberlin*, 16 Verm. 613.

Our conclusion therefore is, that, with the exception of the charge of $78.45, expended after he had received notice by tele-

graph of the proposed abandonment of the scheme, the plaintiff is entitled to recover of the defendants five sixths of the amount of the expenses charged and allowed by the master, less the sum of $500 already paid by his associates and $100 chargeable as his proportion of the advance ; and also five sixths of the sum of $1800 allowed by the master for his services, with interest and costs.                                        *Decree accordingly.*