DE WITT (BUNKLEY v.). See Case No. 2,134.

DE WOLF (BROWNELL v.). See Case No. 2,037.

DE WOLF (FEARING v.). See Case No. 4,711.

DE WOLF v. HARRIS. See Case No. 4,221.

## Case No. 3,852.

### DE WOLF v. HOWLAND et al.

[2 Paine, 356.] [1]

Circuit Court, Second Circuit.

SHIPPING—PART OWNERS—PARTNERSHIP—FACTORS AND BROKERS—LIEN FOR ADVANCES.

1. Where A. and B. purchased the ship S. and her cargo, on account of themselves, and C. and D., in equal third parts, and it was agreed between the parties that C. should go as master and supercargo, the outward cargo to be consigned to C., and A. and B. made all the advances both for ship and cargo, and were constituted the agents and factors in New York for the several parties, and the return cargo was to be consigned to them for sale on account of the concern, held, that the parties interested in this adventure could not be considered partners, but must be deemed tenants in common, each one having a right over his separate share, according to the rules of law applicable to such an interest in chattels, and not to be governed by the law of partnership.

2. Held, further, that A. and B., so far as related to the interest or share of D., must be considered his agents or factors, and that they had a right to retain out of his share of the proceeds of the adventure, for their advances and disbursements in his behalf.

3. A. and B. drew a bill of exchange on D. for their advances, which was accepted by D. but not paid; and, subsequently to the acceptance of the bill, but before it fell due, D., having failed, transferred his interest in the ship and cargo then at sea, to E., for a pre-existing debt. Held, that the bill drawn on D., by A. and B., was not a waiver of their lien on the proceeds of the cargo, especially as E. had notice of their claim.

4. And E. having filed a bill for a discovery and account of the proceeds of the cargo, one-third of which he claimed under D., it was held that he had no superior equity upon which he could rest his claim to overreach the lien of A. and B.

5. Held, however, that as A. and B. were not acting in the character of general factors, but were constituted such under the particular arrangement in relation to this adventure, that their lien must be limited to their advancements for D. on account of the outward cargo, and not for the general balance of their account against him.

[This was a bill in equity by Charles De Wolf against Gardiner G. Howland and Samuel S. Howland.]

THOMPSON, Circuit Justice. The facts upon which this case must turn, are to be collected from the bill and answer, one witness only having been examined, barely to prove the execution of an assignment by George De Wolf to the complainant.

The object of the bill is for a discovery and account of the proceeds of the cargo of the ship Superior, one-third of which the complainant claims under George De Wolf.

[1] [Reported by Elijah Paine, Jr., in 2 Paine, which covers the period from 1827 to 1840. Date of this opinion not given.]

From the bill and answer it appears, that in September, 1825, the defendants purchased the ship Superior and her cargo, on account of themselves, and Jacob Smith and George De Wolf. in equal third parts; that it was agreed between the parties, that Smith should go as master and supercargo, the outward cargo to be consigned to Smith. The defendants made all the advances both for ship and cargo, and were constituted the agents and factors in New York for the several parties, and the return cargo was to be consigned to them for sale. on account of the concern. On the 3d of October, after the ship sailed on her voyage, George De Wolf wrote the defendants to send him a statement of the costs of the ship and cargo, and when due, that he might remit his proportion. On the 20th of October the defendants sent him the amount, and drew on him two bills of exchange—one for the one-third of the cost of the ship. and the other for one-third the amount of the cargo, payable at the average times when the payments for the ship and cargo would fall due. The only question now before the court relates to the cargo, the bill for which bears date on the 10th of October for $4,297.97, payable on the 8th of January then next. This bill was accepted by George De Wolf. and returned to the defendants, who still hold the same, it never having been negotiated by them or in any manner whatever paid or satisfied. George De Wolf failed some time in the month of December, and on the 22d of that month he transferred his interest in the ship and cargo, then at sea, to the complainant, the consideration for which was the payment, by the complainant. of a note which he had endorsed for George De Wolf, dated the 4th of October, 1825.

These are the leading facts in the case. There are others which have a strong bearing upon the result, which will be noticed hereafter; and the main question, under these circumstances, is, whether the defendants have a right to retain, out of the proceeds of the return cargo, enough to satisfy themselves for their advances for George De Wolf. on the purchase of the outward cargo; or whether the complainant is entitled to the same under his assignment from George De Wolf. The parties interested in this adventure cannot be considered partners,[2] but

must be deemed tenants in common, each. one having a right over his separate share,. according to the rules of law applicable to. such an interest in chattels, and not to be governed by the law of partnership. This. would be the obvious conclusion, from the particular arrangement between the parties. in this case, and is the light in which the. law generally considers such adventures. Jackson v. Robinson [Case No. 7,144]. and cases there cited; 4 Pick. 456, 457; Term R. 119, 783.

The defendants. so far as respects the interest or share of George De Wolf, must be considered his agents or factors. They were expressly so constituted by the original arrangement between the parties, and the re-

[2] A person who contracts for a share of the profits of a particular trade or business. as profits, is a partner as to third persons, and is liable for the debts of the partnership. Chase v. Barrett, 4 Paige. 148. Whether a partnership exist, as to creditors. between a merchant and a mere servant or agent of his, who contracts with the merchant for a share of the actual profits as a reward for his services. and who is not held out to the world as a partner? Quaere. Id. To constitute a partnership as between the parties thereto. there must be a joint ownership of funds, and an agreement, either express or implied. to participate in the profits or loss of the business. Id. By articles of agreement. the members of an insurance company covenanted

together, that in case of losses, over the above sum subscribed originally for a capital, each member should bear such part of the loss as was proportioned to the sum by him originally subscribed. This is an ordinary partnership; the members are bound in solido, each for the whole; not only as to strangers, but as to members of the company who have procured insurance. Shubrick's Ex'rs v. Fisher, 2 Desaus. Eq. 148. A proposal by a partner here to another in England to renew a copartnership, just expiring, which was received by the partner in England, and acted upon, by shipping goods, without charging commissions, and other partnership acts, is binding on both. But it may be dissolved in the same informal manner. by mutual consent, implied from the acts of both parties. And one of them shall not afterward be allowed to set up a claim to share in the profits of a new business, such as the commission business, entered into by the other, to which the former contributed neither money, stock nor labor. Dickinson v. Bold's Survivors, 3 Desaus. Eq. 501. The private association of stockholders of the North River Steam Boat Company, is not a copartnership; but the parties are tenants in common of the property and franchises belonging to the company. And in such association, the majority cannot bind the minority, unless by special agreement. Livingston v. Lynch, 4 Johns. Ch. 573. Where a defendant denied in his answer that he was a partner in a company, and there was no proof of his being so, the partnership shall not be presumed from equivocal circumstances. State v. Penman, 2 Desaus. Eq. 1. Though the part owners of a ship, generally speaking, are tenants in common. and not partners or joint-tenants, yet it seems there may be a special partnership in the ship as well as the cargo, in regard to a particular adventure, and the proceeds arising from the sale of them, and the profits of the adventure. Mumford v. Nicoll, 20 Johns. 611. Owners of freight and cargo are partners. Id. The assignees of a bankrupt partner under a separate commission, are tenants in common with the solvent partner, and one cannot call the joint property out of the hands of the other. Murray v. Murray, 5 Johns. Ch. 70. The question considered whether owning a ship employed in trade by several indistinct shares constitutes a partnership. Ch. Desaussure's opinion that it is a partnership, and carries with it all its incidents. Seabrook v. Rose, 2 Hill, Eq. 555. No one partner is entitled to compensation for his services unless there is a special agreement. Nor is he to be allowed for the interest on money advanced to the firm until a general settlement or dissolution. Lee v. Lashbrook. 8 Dana. 214.

Where a special partnership was intended to be formed under the statute, but in one of the newspapers in which the terms were published, the sum contributed was. by mistake of the printer, stated at a different and larger sum

turn cargo came consigned to them, according to the express agreement between the parties. This would clearly give to the defendants a right to retain for their advances. Particular liens of factors are rather favored in the law, as being for the convenience and benefit of trade. They sometimes grow out of the express contract between the parties, and sometimes are implied, from the usage of trade, or the manner of dealing between the parties in the particular case. In Bradford v. Kimberly, 3 Johns. Ch. 431, it is said to be well settled, that a factor may retain the goods or the proceeds not only for the charges incident to that particular cargo, but for the balance of his general account; and this allowance is made not only whilst the goods remain in specie, but after they are converted into money; and that this is a very equitable doctrine, especially when the acceptances and responsibilities were assumed, or necessarily presumed to have been assumed, upon the credit of the property in his possession. The language here used applies with peculiar force to the case now before the court, and is sustained by the well-settled law applicable to the rights of factors: and, indeed, this general principle did not seem to have been questioned on the argument; but the main point pressed upon the court, and which indeed presents the only difficulty in the case, is, whether the bill drawn upon George De Wolf by the defendants, for their advances on his account, was

---

than the true sum mentioned in the certificate, the associates were all held liable as general partners. Argall v. Smith, 3 Denio, 435. And to maintain an action against the associates in such case as general partners, the plaintiff need not prove that he was actually misled by such mistake of the printer. Smith v. Argall, 6 Hill, 479. A man in business may employ another, and agree to compensate him by a share of the profits without conferring on him the rights or subjecting him to liability as a partner, even in respect to third persons. Burckle v. Eckart, 1 Denio, 337. Where one of the parties to a contract for manufacturing is to furnish the building, &c., the other to superintend the work, &c., the former to receive a share in the profits, they are partners as respects third persons. Everett v. Coe, 5 Denio, 180. Where two persons are jointly concerned in the building of a mill, the promise of one to pay for advances made will not bind the other. The community of interest does not create them partners; to constitute them such, there must be an agreement ultimately to share in the profits and loss. Porter v. McClure, 15 Wend. 187. There is no partnership in real estate; the parties are tenants in common. Baker v. Wheeler, 8 Wend. 505; Coles v. Coles, 15 Johns. 160. But tenants in common in timber land, who are also partners in the lumber business, are partners of the timber when converted into logs. Id. The plaintiff employed the defendant to procure consignments for him, and to act as his agent in certain mercantile business, to be carried on in the name of the plaintiff. The defendant, as a compensation for his service, was to receive one-half of the profits of the business: but he had no authority to contract in the name of the plaintiff, nor was he to be liable to third persons for any responsibilities created for the concern. No profits were ever realized, but on the contrary, losses ensued, and the plaintiff brought an action of assumpsit against the defendant for money had and received to his use, as appeared by the books which the defendant had kept; held, that the foregoing acts did not constitute such a partnership between the parties as would bar the action at law; and the plaintiff having recovered a verdict against the defendant for the balance of his account, the court refused to set it aside. Ross v. Drinker, 2 Hall, 415. Two persons agree to burn lime on shares, one to fill a kiln with stone and the other to burn the kiln and to furnish the necessary wood for that purpose, the lime to be equally divided between them; held, that a technical partnership existed between the parties. Musier v. Trumpbour, 5 Wend. 274. Notwithstanding the partnership, however, an action at law may be maintained by one partner against the other for a balance due him, growing out of the partnership transaction, if there be but a single item to liquidate. Id. The defendants being engaged in the transportation of freight, &c., between the city of New York and various places west, by way of the Hudson river and canals, made an arrangement with the Mohawk and Hudson Railroad Company by which it was mutually agreed that the defendants should deliver up their freight, &c., to the company at Albany, and their down freight at Schenectady—the termini of the railroad—the company to transport the freight and passengers over their road, &c., and the defendants to pay therefor in the proportion that thirty miles bore to the whole distance of canal transportations west of Albany, assuming the contract price fixed between the owner of the freight and the defendants as the basis of the calculation; held, in assumpsit by the company to recover for the transportation, that the arrangement did not constitute a partnership between the parties; and this though it was further agreed that the company should furnish "warehouse facilities," and pay a portion of the expense of offices at each end of their road. Mohawk & H. R. Co. v. Niles, 3 Hill, 162. An arrangement like the above will not constitute a partnership between those making it, even in respect to third persons. Id. Where two persons jointly became the owners of a quantity of salt, and one of them, with the assent of the other, took it to market, under an agreement that everything should be done to forward the business, and the salt turned into money; it was accordingly sold, and the proceeds applied to the payment of a joint debt; held, that these facts composed the necessary ingredients of a limited partnership. Cumpston v. McNair, 1 Wend. 457. Where there is no dispute as to the material facts relative to the existence of a partnership, it is a question of law to be decided by the judge not to be submitted to the jury; but where the question was submitted to them, and they found in accordance with the opinion of the court, a new trial was refused on this ground. Id. Where an agreement was entered into to form a joint stock company for the purchase of a steam brig, the terms of which were that the stock should consist of $25,000, to be divided into one hundred shares, one-fourth of the subscription to the stock to be paid on delivery of the bill of sale of the vessel, and the residue by instalments, and a payment was made to the owners of the vessel, by one of the subscribers, of ten per cent. upon the amount of his subscription, and the vessel was subsequently destroyed by fire previous to a delivery of her or the execution of a bill of sale, it was held, that the vessel was at the risk of the owners until the bill of sale was executed; that until then, or an actual delivery of the vessel, there was no partnership in the case; and it having become impossible for the owners of the vessel, in consequence of its destruction, to comply with the contract on their part, the consideration on which the ten per cent. was paid had failed, and the party was entitled to recover it back. Murray v. Richards, 1 Wend. 58.

not a waiver of their lien. If the complainant is chargeable with notice of the defendants' claim upon the proceeds of the cargo, he can stand in no better situation than George De Wolf himself would have stood in; and that he is chargeable with such notice would seem fairly inferable from his own statement in the bill. He states that the parties in interest were each owners of one-third part of the cargo, and that the bill of exchange was drawn by the defendants upon G. De Wolf for their advances and disbursements for his one-third part of the cargo, and made payable on the 8th day of January then next, which was some time after the assignment made by G. De Wolf to the complainant. He must, therefore, have known that the defendants made the advances for the purchase of the outward cargo, and that they had not been reimbursed for the same. The bill does not allege any want of notice; nor could the complainants have been misled by any apparent ownership in George De Wolf. He had, in no sense whatever, the possession of the goods; nor was it a purchase made by the complainants, but only an assignment for a pre-existing debt —a mere security from an insolvent debtor. He has, therefore, no superior equity upon which he can rest his claim to overreach the lien of the defendants. If George De Wolf was the party before the court, he would come with a very ill grace calling for these proceeds without reimbursing the defendants for their advances, as between them the drawing and accepting the bill was manifestly a mere mode of payment; it did not extinguish the original contract. The defendants might have brought their action against him for the advances, and surrendered up this bill. The bill was made payable at the time when payment for the purchase of the cargo fell due; and there are no circumstances tending in any measure to show that the bill was intended as a substitute for the lien which the defendants had upon the cargo and its proceeds. And if, as has been already observed, the complainant stands in no better situation than G. De Wolf would, he, as assignee, must take these proceeds, subject to the same equity to which they were subject in the hands of the assignor. 1 P. Wms. 496; 1 Vern. 691, 764; 1 Ves. Sr. 123; 4 Ves. 121; 2 Johns. Ch. 448; Ross v. The Active [Case No. 12.070]; U. S. v. Sturges [Id. 16,414].

It is not to be denied that some of the cases to be found in the books go very far in asserting, as a general proposition, that as to personal chattels an implied lien is waived by taking security for the debt. But no case has fallen under my observation to sustain such an unqualified rule; they are always attended by circumstances indicating that such was the intention of the parties. The case of Cowell v. Simpson, 16 Ves. 278, which has been much relied upon, turned upon the particular circumstances leading to the conclusion that the lien was intended to be waived. There was a credit of three years given in the note taken, and this was considered of great weight by the court to show the understanding of the parties. And this, together with the inconvenience it would occasion to hold the lien for such a length of time, were the controlling circumstances which governed the decision in that case; and that the rule was here carried to its full extent would seem inferable from what fell from the court in Stevenson v. Blakelock, 1 Maule & S. 541, where it is said it is unnecessary to canvass the doctrine in that case, for then the bills were running, and there was no reason to presume they would not be paid; but in this case the bills have been refused payment, which places the defendant in the original situation as to the lien. This latter remark applies directly to the case now before the court. The bill has not been paid by George De Wolf, and he became insolvent before it fell due, and the defendants ought, upon every principle of justice and equity, to be placed in their original situation as to the lien. So far as the mere circumstance of taking a note or bill may be considered as indicative of an intention to waive an implied lien, it is not perceived that any solid distinction can exist between the cases of an implied lien which the vendor of real estate has for the purchase-money, and an implied lien upon a chattel; and in the former description of cases it is laid down in Garson v. Green, 1 Johns. Ch. 308, that the taking a note for the purchase-money does not affect the vendor's lien. See, also, 1 Schoales & L. 132; 6 Ves. 752; 15 Ves. 329. Where a distinct and independent security is taken either of property or the responsibility of a third person, it might very fairly be construed a waiver of the implied lien. Every case must, therefore, depend, in a great measure, upon its own circumstances, with a view to ascertain the intention of the parties. And this case furnishes no circumstances warranting the conclusion that the defendants intended to waive their lien, and rely upon the personal security of George De Wolf.

This lien must, however, be limited to their advances and disbursements for George De Wolf, on account of the outward cargo, and not for the general balance of their account against him. They were not acting in the character of general factors, but constituted such under the particular arrangement in relation to this adventure. The defendants must, therefore, account to the complainant for the net proceeds of one-third part of the outward and return cargoes, after deducting all legal and customary charges thereon. A decree must, accordingly, be entered conformably to the principles here laid down. See Murray v. Lazarus [Case No. 9,962].