## WILLIAM J. BROWNELL
### v.
## ELISHA B. STEERE.

*Partnership — Dissolution—Sale of Stock — Arbitration — Bill to Set Aside Award—Compensation of Co-partner—Damages—Costs—Interest.*

·1. In the absence of an express stipulation, a partner is not entitled to compensation for services rendered by him in the promotion of the business of the firm. Excess of labor on his part, however great, is no ground for such claim.

2. One partner is not entitled to recover damages from a co-partner in the absence of fraudulent misconduct, or wilful and positive refusal to perform duties devolving upon him as partner, upon the ground that he had neglected the interests of the firm.

3. Under an agreement to dissolve a partnership, sell the stock and submit to arbitrators all matters in controversy, the setting aside of the award does not operate to avoid the sale.

4. Upon a bill filed to set aside an award and for the settlement of partnership accounts, this court declines to interfere with the decree based upon a finding that the parties were liable as partners for services of a certain clerk, and that the firm was bound to pay the cost and expenses of defending a successful suit brought by him to recover therefor, it being clear that the same was defended in good faith.

5. In absence of any unnecessary delay in accounting, the difference between the partners being as to an unsettled balance growing out of other claims, interest will not be allowed.

[Opinion filed December 2, 1888.]

APPEAL from the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Mr. JOHN E. POLLOCK, for appellant.

As a matter of law, McLean's salary should have been charged to Steere, or Steere should have been charged an equal amount for his neglect of duty, or Brownell should have been allowed an equal amount for compensation for his time and attention to the business of the firm.

In the case of Lewis v. Moffett, 11 Ill. 399, Mr. Justice Caton, in delivering the opinion of the court, said: "But there is no inflexible rule of law that one partner shall not recover for extraordinary and unusual services, without an express agreement that he shall be paid for such services. The case of Bradford v. Kimberly, 3 Johns. Ch. R. 431, shows that where certain members of a firm are employed to render services which the law, or the agreement of the parties, does not impose upon them as partners, there the law implies an agreement that they shall be paid. After stating the general rule,

the chancellor in that case proceeds: 'But where the several owners meet and constitute one of the concern an agent to do the whole business, a compensation is necessarily and equitably implied in such special agreement, and they are to be considered as dealing with a stranger.' "

The above case has been cited and approved by the courts in a large number of cases throughout this country, wherever compensation, loss of time, or an implied agreement has been sought to be enforced by one partner as against the firm.

In the case of Emerson v. Durand, Ex'r, etc., 64 Wis. 118, Chief Justice Cole said, in delivering the opinion of the court: "This case differs in many important particulars from ordinary partnerships. The question is, can an agreement to pay the plaintiff what his services were really worth for the management of the business be fairly implied from the circumstances of the case and the acts of the parties." And the court held in that case, citing Bradford v. Kimberly, 3 Johns. Ch. 431; Caldwell v. Leiber, 7 Paige, 483; Lewis v. Moffett, 11 Ill. 392; Levi v. Kerrick, 13 Iowa, 344; Godfrey v. White, 43 Mich. 171; Cramer v. Bachmann, 68 Mo. 310, and Sheridan v. Healey, 15 Chi. Leg. N. 104, that a partner might claim compensation for his services in connection with the partnership business if an agreement to that effect is fairly implied from the course of dealing between the parties, or from circumstances of equivalent force.

In the case of Bradford v. Kimberly, 3 Johns. Ch. 431, it was held that "one joint partner is not entitled, as against the others, to a compensation for his greater or more valuable services, in regard to the common concern, un'ess there be a special agreement to that effect. But where the several joint owners of a cargo appoint one of the part owners their agent to receive and sell the cargo and distribute the proceeds, he is entitled, under such special agency, to a commission, or compensation, for his services, as a factor or agent, in the same manner as a stranger, and as such factor or agent he may retain the goods, or their proceeds, as security, not only for his advances, disbursements or responsibilities in regard to the particular property, but for the balance of his general account."

In Marsh's Appeal, 69 Pa. St. 35, Williams, J., delivering the opinion, said: "The general rule that one partner can not charge the firm for his services is founded on the principle that each partner is bound to devote his skill and labor to the promotion of the common benefit of the concern, and is inapplicable where the reason of it fails." Lewis v. Moffett, 11 Ill. 392.

In the case of Cramer v. Bachmann, 68 Mo. 310, it was held that "whether a partner is entitled to remuneration for services rendered the firm, depends upon the intention of the parties; an express agreement is not necessary, and in order to ascertain whether such compensation should be allowed, the circumstances which surround the parties and their relative situations toward each other should be considered."

In the case of Caldwell v. Leiber, 7 Paige, 483, it was held that an agreement might be implied from the course of business between the co-partners.

In the case of Levi v. Kerrick, 13 Iowa, 344, the court recognizes the exceptions to the general rule, and holds that an agreement may be implied from the course of business pursued between the co-partners, as disclosed by the evidence. See also Rowe v. Wood, 2 Jac. & W., 356; Boardman v. Close, 44 Iowa, 428.

In Story on Partnership, 3d Ed., p. 293, Sec. 182, it is said : "In the next place, as there is an implied obligation in every partner to exercise due diligence and skill, and to devote his services and labors for the promotion of the common benefit of the concern, it hence follows that he must do it without any reward or compensation, unless, indeed, it be expressly stipulated for between the partners, as it well may be under peculiar circumstances."

In this case the award was defective and not binding on either of the parties. It is believed the construction given to the submission in this case by the Supreme Court required the award to be an entirety. Steere v. Brownell, 113 Ill. 415; Alfred v. K. & S. W. R. R. Co., 92 Ill. 609.

The agreement in the submission that the stock should be put up and sold to the highest bidder between the partners,

was only a part of the agreement and must be construed with the whole. And it is believed that a fair construction of it will not bind either of the parties to anything therein contained, except in the event that there would be a binding award rendered in pursuance thereof. Where the judgment of a court has been set aside and held for naught, it is difficult to understand why the parties should be bound by any of the preliminary proceedings in the case. If the judgment is set aside, the præcipe should also fall with it.

The modern rule, as laid down in Morse on Arbitration and Award, page 456, is: "If, by the nullity of the award in any part, one of the parties can not have the benefit intended him as a recompense, or consideration for that which he is to do to the other, the award will usually be treated as void in the whole."

The question of interest in this State is purely a matter of statute: "Creditors shall be allowed to receive at the rate of six per centum per annum for all moneys after they become due on any bond, bill, promissory note or other instrument of writing, on money loaned or advanced for the use of another; or money due on the settlement of account from the date of liquidating accounts between the parties on ascertaining the balance on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. Starr and Curtis' Annotated Statutes, Vol. 1, p. 1356, Sec. 2; Sammis v. Clark, 13 Ill. 544; Hitt v. Allen, 13 Ill. 592; McCormick v. Elston, 16 Ill. 204; Aldrich v. Dunham, 16 Ill. 403; I. C. R. R. v. Cobb, 72 Ill. 152; Newton v. Shafer, 38 Ill. 379; Jassoy v. Horn, 64 Ill. 379; Daniels v. Osborn, 75 Ill. 615; Davis v. Kenago, 51 Ill. 170; Chapman v. Burt, 77 Ill. 337; Bedell v. Janney, 4 Gilm. 193; Devine v. Edwards, 101 Ill. 138.

Messrs. KERRICK, LUCAS & SPENCER, for appellee.

In the absence of a special agreement to that effect, a partner can not have compensation for his services in and about the firm business. Roach v. Perry, 16 Ill. 37; Hanks v. Baber, 53 Ill. 292; Askew v. Springer, 111 Ill. 663; Burgess v.

Badger, 14 N. E. R. (S. C. Ill.), 851; Kimball v. Lincoln, 5 Ill. App. 322; Strattan v. Tabb, 8 Ill. App. 227; Forrer v. Forrer, 29 Gratt., 134; Thornton v. Thornton, 1 Austr. 94; Randall v. Richardson, 53 Miss. 176; Brown's Appeal, 89 Pa. St. 147; Lindley on Partnership, Vol. 2, 774; Bates on Partnership, Sec. 770.

Wilson, J., in Kimball v. Lincoln, *supra*, says: "In the absence of an agreement for compensation, a partner is not permitted to charge for his personal services in managing the partnership business during the continuance of the partnership."

And in Strattan v. Tabb, *supra*, Wall, J., says: "The evidence shows that each member of the firm was equally interested in the stock, and that the claimant had general charge of the business, giving his whole time and attention, while the other partners gave their attention mainly to other pursuits. This would not give claimant a right to special compensation unless there was an agreement to that effect."

In Burgess v. Badger, *supra*, Scholfield, J., says: "We believe the rule to be well settled, that in the absence of a stipulation to that effect, one partner is not entitled to charge his copartners for his services, or because he has done more than his just proportion of the work. The law never undertakes to measure and settle between the partners their various and unequal services bestowed on the joint business."

In Forrer v. Forrer, *supra*, Staples, J., says: "No rule of law is better settled than that one partner is not entitled to compensation for his services while employed in the partnership business, unless it be so agreed between the partners. The doctrine is thus laid down by a writer of acknowledged merit: 'As it is the duty of each partner to devote himself to the interest of the concern, to exercise due diligence and skill for the promotion of the common benefit, it follows that he must do it without any reward or compensation, unless there is an express stipulation to that effect; and there is no difference in this respect, although the duties performed by the partners have been very unequal in value and amount.'" Colyer on Partnership, Sec. 183; Strong on Partnership, Sec.

182; Parsons on Partnership, p. 130; Franklin v. Robinson, 1 Johns. Ch. 157.

"It has been not infrequently said that there is no rule as to the charging or allowing interest in settling partnerships, but that each case must stand on its own circumstance. It is true that there is no unbending rule similar to the disallowance of extra compensation for additional services on the part of a partner, nevertheless certain general guiding principles can be laid down." Bates on Partnership, Sec. 786.

Interest should always be charged against a partner who unnecessarily delays accounting, or who uses the partnership funds about his own business. Derby v. Gage, 38 Ill. 27; Ligare v. Peacock, 109 Ill. 94; Stroughton v. Lynch, 1 John. Chy. 467; Johnson v. Hartshorne, 52 N. Y. 177; Broling v. Dobyns, 5 Dana, 434; Honore v. Comesnil, 7 Dana, 199; Taylor v. Young, 2 Bush. 428; Dunlap v. Watson, 124 Mass. 305; Crabtree v. Randall, 133 Mass. 552; Wells v. Babcock, 56 Mich. 276; Dimond v. Henderson, 47 Wis. 172; Bates on Partnership, Sec. 788; Lindley on Partnership, 977.

Such an agreement is implied from a usage crediting interest on the books before and after the time in question. Miller v. Craig, 6 Beav. 433; Lloyd v. Canie, 2 Lans. 364; Pratt v. Holton, 11 La. Ann. 260.

PLEASANTS, J.  In January, 1877, appellant bought at sheriff's sale the stock of boots and shoes previously belonging to O. Rugg, for whom John P. McLean, a son-in-law of appellee, had been salesman and clerk for sixteen years. Largely if not solely with the view of obtaining continued employment for McLean, appellee arranged with appellant to furnish half the price and become an equal partner with him. They had long been intimate friends; each had been a successful merchant and had handled boots and shoes as part of a general stock, but neither had any experience in that trade exclusively. There was no written agreement of partnership, nor any express understanding as to the conduct of the business or the duties of the respective partners. Whether there was any as to the compensation of McLean was a matter of dispute

between them.  The business was carried on under the firm name of W. J. Brownell & Company, until January, 1882, the first two years in the same store that had been occupied by Rugg.  Appellee personally paid little or no attention to it. Appellant had the responsible management and gave to it the most of his time; but McLean, as was to be expected from his knowledge of the trade and of the stock and customers of the store, performed a prominent, if not the leading part, selecting for purchase, selling, keeping the books, making collections and having charge of the correspondence.  During the five years of the firm's existence, he drew from time to time and charged to himself upon its books, with the knowledge of appellant, the aggregate amount of $4,723.54, but had no settlement of his account.  In January, 1882, appellant, claiming that appellee had agreed to pay it, directed McLean to charge it to him, and on McLean's refusal so to do, made the charge himself.  Appellee, on being informed of this, denied the alleged agreement and disallowed the charge.  A rupture immediately followed, and the parties thereupon executed an article in writing, whereby it was agreed that the firm was thereby dissolved except for the adjustment of its business, which should be done in the following manner : The store should be immediately closed, the goods on hand invoiced and delivered to Peter Whitmer, Lyman Ferre and Duncan Funk, who should immediately sell them to whichever of the parties should bid the largest percentage on said invoice price; and upon payment to them of one-half the amount of such bid deliver them to the purchaser, to whom also the lease of the store should be assigned; and retaining such money in their hands, they should at once proceed as arbitrators to adjust and state the account between said parties touching the matters in difference between them as partners.  They were also to determine whether the salary of McLean should be paid by appellee or by the firm, and other matters outside of the partnership, some of which were specifically mentioned, and make report of their finding in writing. It further provided that upon such finding as to partnership matters a decree and supplemental decree might be entered,

and for the balance found due on the individual account a judgment rendered by the Circuit Court of McLean county; and that the money so in their hands at the time of making their report, or so much thereof as should be necessary, should be applied in payment of such indebtedness on the account stated.

Pursuant to said agreement, the goods were invoiced and offered for sale. Appellee bid 103 per cent., but appellant offered 104, amounting to $12,361.66, and they were sold to him at that price, being delivered about the 7th of February, 1882. The arbitrators then proceeded to hear the parties upon the matters submitted, and on the 6th of April following delivered their award, finding that the amount drawn out by McLean should be charged to appellee, as should be any additional claim if made by him on account of his services, and on the whole account, partnership and individual, including the purchase of the stock by appellant at the price above stated, a balance due from him to appellee of $3,785.59. Immediately upon the purchase, $2,500 in cash had been deposited by appellant with the arbitrators, and on delivery of their award he gave them his check on the bank of which arbitrator Whitmer was president, for the further sum of $1,285.59, and arranged for its payment on presentation, thus making up the full amount of the balance so awarded, to be delivered or tendered by them to appellee. The latter, however, was dissatisfied with the finding, refused to accept said amount as the balance due him, and filed the bill herein to set aside the awa d and praying for an account. On final hearing in the Circuit Court the award was sustained and a decree made dismissing the bill, which decree was affirmed by the Appellate Court, but on further appeal was reversed by the Supreme Court upon the sole ground that some of the matters in difference submitted were not settled by the award, other objections urged thereto being overruled, as technical and unsound. Steere v. Brownell, 113 Ill. 415. This decision was made March 30, 1885. On remandment, an interlocutory decree was entered, setting aside the award and referring the cause to a special master to take the proofs and report the

same, with his findings thereon, and to state the account. Thereupon appellant sought to withdraw the $2,500 he had deposited with the arbitrators, which appellee opposed, but he succeeded in obtaining it about the 1st of January, 1886, on giving to the bank an indemnifying bond. About that time also McLean brought suit against these parties, as late partners, for a balance claimed to be still due him for his services to the firm. Appellant earnestly contested this claim, but appellee, though he filed separately the plea of the general issue, admitted through his counsel that something was due on a *quantum meruit*, leaving it to the jury to find the amount, without offering evidence on behalf of the defendants or in any way controverting that of the plaintiff; and the action resulted in a judgment against the defendants for $1,284.97 damages (including interest from its date) and $192.75 costs, which appellant paid April 8, 1887.

The master made his report December 3, 1887, among other things charging appellant, in favor of the firm, with the amount of his bid for the stock, and with interest amounting to $3,607.85, allowing appellee to withdraw from the assets or their proceeds the balance remaining to his credit of what he had put into the business, and dividing only the residue equally between the parties, and charging the firm with what had been drawn out by McLean, the amount of his judgment and the costs and expenses incurred in defending the suit. His statement of the account showed a balance due from appellant to appellee of $8,695.45.

Numerous exceptions to this report were filed by each party, all of which the court overruled, excepting that of appellant to the charge for interest, and made a final decree for appellee for $6,891.53, being a reduction of the amount found by the master by one-half of the interest he had allowed.

Appellant here contends (1) that McLean's salary, with the costs and expenses of the defense to his suit, should have been charged to appellee and not to the firm; (2) that appellant should have been charged for the stock its fair market value, and not the amount of his bid; and (3) that all the assets or

their proceeds found to be in his hands, including whatever of original capital , still remained, should have been divided equally.

Having affirmed, in respect to the salary of McLean, that appellee expressly agreed to pay it, and that McLean was so informed at the time of his employment, which was denied, the burden of proof was upon him. The positive testimony relating to it was conflicting, and each side was supported by circumstances. Both the master and the chancellor found against him. We see no sufficient reason for overruling them. In such cases generally we must decline a discussion of the evidence as useless, but may here again remark that in a suit for a portion of this salary, in which appellant was both a defendant and a witness, the firm suffered judgment, which he paid.

If it was liable for this salary it was consequently liable for the costs and expenses of the defense to the suit brought for its recovery.

He next argues that if there had been no such agreement, still, under the circumstances of this case, equity should allow him a sum equal to the amount of McLean's salary, as compensation for his own services in excess of those rendered by appellee.

The rule, as stated in Story on Partnership, Sec. 182, and approved by all the cases and writers on this subject, is that " as there is an implied obligation on every partner to exercise due diligence and skill, and to devote his services and labors for the promotion of the common benefit of the concern, hence it follows that he must do it without any reward or compensation, unless, indeed, *it be expressly stipulated for between the partners,* as it well may be under peculiar circumstances. The reason is, that each partner, in taking care of the joint property, is in fact taking care of his own interest, and is performing his own duties and obligations, implied in, and constituting a part of, the consideration for the others to engage in the partnership; and the law never undertakes to measure and settle between the partners the relative value of their various and unequal services bestowed on the joint

business, for the obvious reason that it is impossible to see how far, in the original estimate of the parties when the connection was formed, the relative experience, skill, ability, or even the known character and reputation of each, entered as ingredients into the adjustment of the terms thereof." For a concise statement of it, see King v. Hamilton, 16 Ill. 196.

It is said that exceptions to this rule are allowed where an agreement for compensation may be fairly and justly implied; and further, in general terms, that it may be so implied "from the nature of the services rendered, in connection with the duties and obligations imposed by the copartnership articles." Lewis v. Moffett, 11 Ill. 398; or "from the course of business or dealing between the copartners," Levi v. Karrick, 13 Iowa, 350; or "from circumstances of equivalent force," Emerson v. Durand, 64 Wis. 118. But these cases themselves, and those therein cited, seem to limit the scope of such general terms, and confine the exceptions, so called, to services of a special character, which the partner, as such, was not bound to render, either by the terms of the copartnership agreement or by implication of law arising from their character and their relation to the partnership business. In respect to such services he is regarded as not a partner but a stranger; and in strictness these are not exceptions to the rule as stated, which clearly contemplates only those properly pertaining to the relation of a partner, or prescribed by the agreement, in the rendition of which he is only "performing his own duties" as a partner.

In the case before us, the partnership and its business were of a very ordinary kind. It is not pretended that appellant rendered any service not properly and usually devolved upon the partners in such a business, and clearly embraced in their implied obligation. The unusual feature about them was not in their nature or character, but simply and solely their excess in amount over those rendered by his copartner. And it is well settled that mere excess, however great, is no ground of right to compensation. Burgess v. Badger, 124 Ill. 288; Roach v. Perry, 16 Ill. 37; Lewis v. Moffett, 11 Ill. 398;

Strattan v. Tabb, 8 Ill. App. 227; Bradford v. Kimberly, 3 Johns. Ch. 431; Godfrey v. White, 43 Mich. 181.

It is suggested that if appellant is not entitled to compensation, as such, he should be allowed it, in effect, as damages against appellee for his neglect. But he is not charged with fraudulent misconduct or with wilful and positive refusal to perform any duty devolving upon him as a partner; and it is only in such cases that damages are allowed. Marsh's Appeal, 69 Pa. St. 35; Caldwell v. Leiber, 7 Paige, 483. It does not appear that at any time before the dissolution appellant complained of his neglect or claimed that he˘was disappointed by it; nor was any evidence offered to show or tending to show how or how much he was damaged thereby. Indeed, from the course of dealing between the parties and other circumstances in proof, we think it may be fairly inferred that appellee was never expected to give his personal attention to the business —in other words, that by a fair understanding between them he was released from the implied obligation so to do.

The claim that appellant should have been charged for the stock he purchased no more than its fair market value, rests upon the proposition contended for, that the effect of the decree setting aside the award was to vacate the bid also.

The award alone was set aside, and we think it clear that the sale was no part of it, nor in any way dependent upon it. For the agreement expressly provided that it should be consummated, in the manner and upon the terms therein prescribed, before the arbitrators were to proceed to a hearing upon the matters submitted. It contemplated that the stock would be delivered to the purchaser and might be absolutely disposed of by him before the award could be made. Certainly a binding award was expected to follow. The sale was made to facilitate it, but not in consideration of it. Appellant got, in the stock, all he bid for. The price was to be treated in the settlement and award just as the stock would have been if there had been no sale. It is so treated by this decree, and we think rightly.

It appeared from appellant's individual account that at the time of its dissolution he was indebted to the firm. The bal-

ance against him was $535.84. He had thus withdrawn all of his original capital. There remained to the credit of appellee, after transferring the amount of McLean's compensation from his account, where appellant had placed it, to that of the firm, the sum of $1,614.37 of money actually invested in the business. It was therefore proper to allow him to withdraw it before division.

On cross-errors assigned, appellee complains of the charge against the firm for the costs and expenses of the McLean suit, insisting that appellant, having all the assets of the firm in his hands, ought to have paid the claim without suit. We agree with the master, that the defense was justified by the circumstances and was made in good faith, in the interest of the firm. It should bear the expense.

Again, he complains of the disallowance by the court of the charge against appellant for interest. The master charged him at the rate of six per cent. per annum on the whole amount of the assets fixed by the bid, less the $2,500 deposited in part payment, from the 7th of February, 1882, when the goods were delivered to him, to January 1, 1886, when said deposit was returned to him; on the whole amount, from that date to April 8, 1887, when he paid the McLean judgment; and from that time, on said amount, less the amount of said judgment, to December 3, 1887, when the master's report was filed—in all, the sum of $3,607.85; which the court, on exception thereto sustained, struck out.

It is conceded that there is no fixed and unbending rule as to the charging of interest in such cases, but that each must stand on its own circumstances. It is insisted, however, that it should always be charged against a partner who unnecessarily delays accounting, or who uses the partnership funds about his own business.

We do not regard this as such a case, but rather as one of mutual account for money demands, with the balance in dispute and unsettled until the decree herein was made.

Upon the purchase of the stock by appellant, what had been the interest of appellee therein was thereby converted into a money demand. What was due him on this purchase was

never disputed; but there were other claims, by each party against the other—on both individual and partnership account —and the balance on the whole was unsettled. But there was no unnecessary delay in accounting. All these matters were at once, upon the dissolution, referred for adjustment and settlement to a board of their own choosing, and immediately upon their reporting the balance found against him, appellant tendered the full amount. And this tender he kept good; for although he withdrew the money deposited when the award was set aside, his indemnifying bond should be considered an equivalent substitute. He had good reason for the belief that the balance found by the award was all that was really due, and would ultimately be so established. The Circuit Court and this court had sustained that finding. It was set aside by the Supreme Court upon grounds which did not certainly indicate that it would be materially changed. In respect to the item which makes the difference, within $20, between it and the amount found by this decree—the compensation of McLean—we can not doubt that the position of appellant was taken in good faith, as it was supported by not a little evidence. If the decree had been in his favor on that point, it would be difficult to state a sufficient reason for overruling it. The case was a close one. Perhaps the decisive circumstance in relation to it was that the burden of proof was upon the appellant. The question continued to be in court and in process of settlement. Appellant interposed no hinderance. It was not settled until this decree was made.

Under these circumstances, we think the court was right in disallowing the charge for interest. Perceiving no material error in the record, the decree will be affirmed.

*Decree affirmed.*